SQUIRTCO, Appellant,

v.

TOMY CORPORATION, Appellee.

No. 82–571.

United States Court of Appeals,
Federal Circuit.

Jan. 10, 1983.

Daniel Van Dyke, Grand Rapids, Mich., argued the case for appellant. With him on the briefs were Thomas M. McKinley and Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich.

Edward D. O'Brian, Anaheim, Cal., argued the case for appellee.

Before MILLER, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board (board) of the Patent and Trademark Office dismissing appellant's opposition [1] to application serial No. 179,259 for registration of the mark SQUIRT SQUAD for "floating water toys." We reverse.

### Background

The opposer in this case, SquirtCo, through its predecessors, has been engaged since approximately 1936 in the manufacture, advertising, and sale of soft drink products and has used the trademark SQUIRT on or in connection with its soft drinks continuously over the past 40 years. SquirtCo is the owner of a number of registrations for the mark SQUIRT in various displays for a variety of soft drinks.[2] In addition, SquirtCo obtained Registration No. 710,198,[3] issued January 24, 1961, for the mark SQUIRT for toy balloons in the following form:

SquirtCo also owns other current registrations for SQUIRT for glass salt and pepper shakers and periodical publications. However, in view of our holding herein the details of these registrations need not be set out.

Tomy Corporation, appellee, is a manufacturer of a line of toys, including wind-up toys and games of various types. In February 1978, Tomy added two wind-up water toys to its line. One of these resembles a whale, the other an elephant, and both can be made to move and squirt in water. After obtaining a search which disclosed the above registrations of SquirtCo, Tomy proceeded to use the mark SQUIRT SQUAD for these toys and, on July 24, 1978, filed for registration of this mark, denominating the goods broadly as "floating water toys." The application was approved and published for opposition in the Official Gazette on February 20, 1979. SquirtCo filed a timely opposition alleging likelihood of confusion of the public because of the similarity between Tomy's subject mark applied to its goods and SquirtCo's mark SQUIRT, alone and with design features, as applied to the goods set forth in its registrations. In addition, SquirtCo alleged that for many years it had been engaged in the distribution and sale of toys, sporting goods, articles of

---

1. Opposition No. 62,392 filed April 23, 1979, by SquirtCo. The real party in interest was stated on appeal to be Squirt & Company, a Michigan corporation, by virtue of a merger into Squirt-Pak, Inc., and simultaneous change of name. "Appellant" and "SquirtCo" are used herein to identify both SquirtCo and its successors in interest as appropriate. The decision of the board dated October 23, 1981, is reported at 212 U.S.P.Q. 304.

2. Reg.No. 388,777, issued July 8, 1941, republished, renewed 1961, 1981, Sec. 8 affidavit accepted, Sec. 15 affidavit filed; Reg.No. 410,-117, issued Nov. 7, 1944, republished, renewed

1964, Sec. 8 affidavit accepted, Sec. 15 affidavit filed; Reg.No. 528,806, issued Aug. 8, 1950, renewed 1970, Sec. 8 affidavit accepted, Sec. 15 affidavit filed; Reg.No. 689,587, issued Dec. 8, 1959, renewed 1979, Sec. 8 affidavit accepted, Sec. 15 affidavit filed; Reg.No. 748,123, issued Apr. 16, 1963, Sec. 8 affidavit accepted, Sec. 15 affidavit filed; Reg.No. 771,971, issued June 23, 1964, Sec. 8 affidavit accepted, Sec. 15 affidavit filed. An earlier registration, No. 387,659, issued May 23, 1939, apparently was allowed to expire in 1979.

3. Section 8 affidavit accepted, Sec. 15 affidavit filed, renewed 1981.

clothing, and other personal items for children and adults. The record shows that SquirtCo has, at various times, sold or given away items bearing the mark SQUIRT, such as T-shirts, pens, dart boards, tennis balls, clocks and beach balls, as well as balloons, in connection with promotion of its soft drinks.

## Discussion

■ The issue presented in this case is a simple one: Is appellee's use of the mark SQUIRT SQUAD for floating water toys likely to cause confusion with the mark SQUIRT as used or registered by SquirtCo? It is not necessary that appellant prove likelihood of confusion with respect to usage of its mark on all of the goods set forth in the pleadings. Rather, the opposition must be sustained if Tomy's use of SQUIRT SQUAD is so similar to use of SQUIRT for a single product with respect to which SquirtCo has established prior rights that there is likely to be confusion as to their source.

On appeal, SquirtCo focuses on its prior rights in SQUIRT for toy balloons, as evidenced by its incontestable registration covering this use of the mark. SquirtCo argues that the board improperly limited the effect of the registration in finding that Tomy's use of SQUIRT SQUAD was not likely to cause confusion with use of SQUIRT on balloons which promote the SQUIRT soft drink. We agree that this restricted view of the issue was error and that the opposition must be sustained, as more fully explained below.

■ Considering first the goods of the parties as set forth in the subject application and registration, namely, floating water toys and balloons, both are simple inexpensive toys, likely to be enjoyed by the same age group and normally available through the same channels of trade. Nothing in the specific nature of balloons and floating water toys negates the likelihood that such goods could be thought to come from the same source. Indeed, a likelihood of confusion could only be avoided if the goods were sold under distinguishing marks. The marks SQUIRT and SQUIRT SQUAD are, however, of such similarity that they are more likely to create confusion than prevent it. Not only does appellee's mark SQUIRT SQUAD incorporate the whole of appellant's mark SQUIRT, but also, in SQUIRT SQUAD, SQUIRT retains its identity. Because of the alliteration with SQUIRT, SQUAD is an apt choice to combine with SQUIRT to suggest a line or group of toys from the same source as SQUIRT balloons. Thus, the marks do not create different commercial impressions. If there were any doubt about this conclusion, it would, of course, have to be resolved in favor of the prior user, in this case, SquirtCo. *San Fernando Electric Manufacturing Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 196 U.S.P.Q. 1 (Cust. & Pat. App.1977); *Wella Corp. v. California Concept Corp.,* 558 F.2d 1019, 194 U.S.P.Q. 419 (Cust. & Pat.App.1977); *Stanadyne, Inc. v. Lins.,* 490 F.2d 1396, 180 U.S.P.Q. 649 (Cust. & Pat.App.1974).

Tomy urges that we must look at more than these words in resolving the issue of likelihood of confusion, pointing out that SquirtCo's mark, as registered for balloons, shows distinctive lettering on a dark medallion. In Tomy's view, SquirtCo's rights must be restricted to the particular display in its registration. Two flaws are apparent in this position.

■ First, the argument concerning a difference in type style is not viable where one party asserts rights in no particular display. By presenting its mark merely in a typed drawing, a *difference* cannot legally be asserted by that party. Tomy asserts rights in SQUIRT SQUAD regardless of type styles, proportions, or other possible variations. Thus, apart from the background, the displays must be considered the same.

■ Second, SquirtCo has put into evidence specimens of use on balloons showing SQUIRT in block letters with no medallion background. SquirtCo may, of course, rely on these displays as well as the display in its registration. Registration in a particu-

lar form places no restriction on one's common law rights.

Thus, particular displays do not provide a basis for negating the conclusion that there is a likelihood of confusion between SQUIRT and SQUIRT SQUAD when used on toy balloons and water toys, respectively.

This straightforward analysis of the issues in this opposition became lost in a welter of befogging arguments and evidence, leading the board into irrelevant considerations. SquirtCo overreached, seeking a holding that would bring within the ambit of protection of its mark SQUIRT for soft drinks virtually any goods which might be used as promotional items for that product. Tomy, on the other hand, directed its efforts principally to an argument that "squirt" is a common descriptive word and neither party, therefore, can have such significant rights as to interfere with the other's use of the term.

 To establish its theory, SquirtCo sought to introduce evidence of long and extensive sales of soft drinks under the mark SQUIRT[4] and introduced evidence that it sold or gave away many types of items bearing the mark SQUIRT. However, the evidence was too imprecise to show the quantum of use of SQUIRT on individual items, that it was continuous rather than isolated usage, or that the public has come to associate the mark SQUIRT with a particular item or a line of toys. Nor has SquirtCo proved that floating water toys are, by their nature, typical pro-

motional goods. We agree with Tomy that the mere possibility that such goods could be used as promotional goods does not create a likelihood that the public would associate them with the SQUIRT soft drinks and that the limited holding with respect to use of the identical mark of another on T-shirts in *Tuxedo Monopoly, Inc. v. General Mills Fun Group,* 648 F.2d 1335, 209 U.S.P.Q. 986 (Cust. & Pat.App.1981), does not support SquirtCo's position.

 In attempting to prove that SQUIRT was identified with a wide variety of goods, SquirtCo's witness testified that various items bearing the mark SQUIRT, including balloons, were sold or given away in connection with promotion of its soft drink. Relying on this fact, the board dismissed the significance of use of SQUIRT on these goods, terming such use merely of "promotional value." Regardless of the merits of this view with respect to any other goods, appellant's rights with respect to toy balloons are not in the same category. Not only did SquirtCo prove long prior and continuous use of SQUIRT on toy balloons, but also it was clear error for the board to discount the effect of SquirtCo's registration for these goods.

As the United States Court of Customs and Patent Appeals repeatedly stated,[5] where the likelihood of confusion is asserted with a registered mark, the issue must be resolved on the basis of the goods named in the registration and, in the absence of spe-

---

4. *Sua sponte,* the board refused to consider SquirtCo's summary of sales and advertising figures going back to 1936, finding the summary to be hearsay, on the ground that the witness did not personally prepare the summary and could not have had personal knowledge of the figures, having been in SquirtCo's employ only a year and a half. This ruling was made in the board's final decision following a specific holding that Tomy had waived its right to object to this evidence as hearsay by failing to do so during the taking of the deposition. We agree with appellant that it was improper for the board to invoke the exclusionary hearsay rule on its own behalf. Summaries of voluminous records are frequently used as exhibits rather than the records themselves, for the convenience of both parties and need not be condemned by the board. The practical considera-

tion of the cost to a client in reviewing records going back forty years may well lead counsel to refrain from making an objection to such proof if the summary appears reasonable and original sources of the data are made available upon request. In the absence of such objection, the offering party has a right to consideration of the evidence it has submitted. The unfairness of the board in invoking a curable defect of proof after trial is manifest and its ruling cannot be upheld.

5. The holdings of the Court of Customs and Patent Appeals have been adopted as precedent for this court. *South Corporation v. United States,* 690 F.2d 1368, 215 USPQ 675 (Fed.Cir. 1982).

cific limitations in the registration, on the basis of all normal and usual channels of trade and methods of distribution. *San Fernando Electric Manufacturing Co. v. JFD Electronics Components Corp.,* 565 F.2d at 685, 196 U.S.P.Q. at 2. There is no specific limitation here, and nothing in the inherent nature of SquirtCo's mark or goods that restricts the usage of SQUIRT for balloons to promotion of soft drinks. The board, thus, improperly read limitations into the registration. SquirtCo should not have been placed in a less favorable position by submitting evidence of use than it would have been by relying solely upon its registration.

Tomy's further argument that SquirtCo should not be allowed to interfere with another's ordinary language usage of "squirt" is wholly without merit. This opposition does not raise a question of ordinary language usage. SquirtCo, as opposer, seeks to preclude the recognition afforded by a registration of the proprietary rights which Tomy claims in SQUIRT SQUAD for toys. Tomy cannot, on the one hand, assert that SQUIRT SQUAD is not descriptive of its goods, which it must do in order to entitle it to registration on the Principal Register, and when opposed, assert that the opposer is interfering with ordinary language usage. This position is wholly inconsistent with the fact of Tomy's application.

In any event, the issue here is likelihood of confusion created by use of the respective marks. Tomy has put forth a technical argument concerning the scope of protection to which certain types of words are legally entitled. The scope of protection of a mark is bounded by the line at which there is a likelihood of confusion of the public caused by another's use of the same or similar mark, not by technicalities.

### Conclusion

For the above reasons, the decision of the board dismissing the opposition is *reversed.*

REVERSED.