THIS OPINION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed:
November 16, 2006
PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Big Pig, Inc.

————

Serial No. 78249582

————

Ava K. Doppelt of Allen, Dyer, Doppelt, Milbrath &
Gilchrist, P.A. for Big Pig, Inc.

Kevon L. Chisolm, Trademark Examining Attorney, Law Office
103 (Michael Hamilton, Managing Attorney).

————

Before Hairston, Bucher and Rogers, Administrative Trademark
Judges.

Opinion by Hairston, Administrative Trademark Judge:

On May 14, 2003 Big Pig, Inc. filed an application to

register the mark PSYCHO (standard character form) for goods

identified as "clothing, namely, hats, caps, jackets, t-

shirts, aprons, shirts, blouses, shorts, pants, sweatshirts,

sweatpants."[1]

The trademark examining attorney refused registration

of applicant's mark under Section 2(d) of the Trademark Act,

15 U.S.C. §1052(d), in view of Registration No. 1,495,164

———————————

[1] Serial No. 78249582; claiming a date of first use anywhere and a
date of first use in commerce of 1986.

for the mark PSYCHO for "clothing, namely, t-shirts, shirts and shorts."[2]  The examining attorney also refused registration of applicant's mark on the ground that it is ornamental.  Finally, the examining attorney refused registration on the ground that the mark sought to be registered is assertedly a mutilation of the mark in actual use, as shown by the specimen.

Applicant, in its response, argued against the refusals.  When the examining attorney subsequently made the refusals final, applicant appealed.  Applicant and the examining attorney filed briefs, and applicant filed a reply brief.

Preliminary Matters

After the filing of its initial brief, applicant filed a request to remand the application for consideration of an amendment to the identification of goods.  The Board denied the request because applicant did not show good cause for the remand.  Thus, the identification of goods as set forth above is the operative identification in this case.  For this reason, we do not address the arguments in applicant's

---

[2] Issued July 5, 1988; combined affidavit under Sections 8 and 15 accepted and acknowledged, respectively.

reply brief that are directed to the proposed amended identification of goods.

Further, after the filing of its reply brief, applicant filed a request to remand the application to enter a claim of ownership of Registration No. 2,929,066 for the mark PSYCHO for "barbeque sauce," and a statement that "[t]he mark is presented in standard character format without claim to any particular font style, size or color." Applicant states that the purpose for claiming ownership of Registration No. 2,929,066 is "to clarify the nature of the goods listed in the application." However, for the reasons discussed *infra*, applicant's ownership of such registration is immaterial to the issue of likelihood of confusion herein. Insofar as the proposed statement with respect to the presentation of the mark is concerned, applicant states that it "seeks to comply with Trademark Rule 2.52." However, at the time applicant's application was filed, the USPTO did not require an applicant seeking registration of its mark in typed drawing or standard character form to provide a statement of this type. Thus, a remand for this purpose is unnecessary. In short, applicant has not shown good cause for its remand request at this late stage of the proceeding, and the request is accordingly denied. TBMP Section 1209.04.

We also note that the examining attorney, in his brief, withdrew the ornamental refusal. Thus, the issues on appeal are the Section 2(d) likelihood of confusion refusal and the refusal on the ground that the mark sought to be registered is assertedly a mutilation of the mark in actual use, as shown by the specimen.

Section 2(d) Likelihood of Confusion Refusal

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

Turning first to a consideration of the goods, we find that they are legally identical (registrant's t-shirts, shirts, and shorts all are included in applicant's operative identification) and otherwise closely related clothing

items.  Applicant does not dispute this, but argues that the trade channels for the respective goods are so different that that there is no likelihood of confusion.  Applicant asserts that its clothing items are sold only at its restaurants and that registrant's clothing items must be presumed to be sold only at skateboarding shows, skateboarding facilities, and in sporting goods stores.  According to applicant, "it is difficult to determine how these goods could ever be confused."  (Brief at 7).  In support of its contention with respect to the trade channels for registrant's goods, applicant submitted printouts of the homepages of several sporting goods retailers which advertise "Psycho" skateboards and accessories made by Vision Sports, Inc., the owner of the cited registration.

The issue of likelihood of confusion is determined on the basis on the goods as identified in the involved application and cited registration, regardless of what the record may reveal as to the particular nature of the goods, their actual trade channels or the class of purchasers to which they are in fact directed and sold.  See, e.g., Octocom Systems Inc. v. Houston Computer Services Inc., 918 F.2d 937, 16 USPQ2d 1813 (Fed. Cir. 1987).  It is well settled that absent any specific limitations or restrictions in the identifications of goods as listed in the applicant's

application and the registrant's registration, the issue of likelihood of confusion must be determined in light of consideration of all normal and usual channels of trade and methods of distribution for the respective goods and on the basis of all customary customers therefor.  See, e.g., CBS Inc. v. Morrow, 708 F.2d 1579, 218 USPQ 198 (Fed. Cir. 1983); Squirtco v. Tomy Corp., 697 F.2d 1038, 216 USPQ 937 (Fed. Cir. 1983); and Paula Payne Products Co. v. Johnson Publishing Co., Inc., 473 F.2d 901, 177 USPQ 76 (CCPA 1973).

In this case, the identifications of goods in applicant's application and the cited registration do not include the limitations argued by applicant.  In other words, the identification of goods in applicant's application does not include language limiting the sale of applicant's clothing items to applicant's restaurants and the identification of goods in the cited registration does not include language limiting the sale of registrant's clothing items to skateboarding shows, skateboarding facilities and sporting goods stores.  Accordingly, because both applicant's goods and those of the registrant are identified without limitation as to trade channels or purchasers, the goods must be presumed to be suitable for sale through all normal and usual trade channels therefor (e.g., clothing stores, and mass merchandisers) to all the

6

usual classes of purchasers.  See, e.g., In re Elbaum, 211 USPQ 639 (TTAB 1981).  It is clear then that if such legally identical and otherwise closely related clothing items were to be marketed under the same or similar marks, confusion as to the source or sponsorship thereof would be likely to occur.

Considering then the marks, applicant acknowledges that the marks are "identical words," and there is no dispute that the marks are identical in terms of appearance and sound.  However, applicant argues that the marks "differ dramatically in the meanings applied to them."  According to applicant, its "mark PSYCHO connotes a sauce so spicy and delicious that it makes the diner crazy," and "when applied to clothing, the meaning remains spicy and delicious."  With respect to registrant's mark, applicant argues that "'PSYCHO,' as applied to registrant's clothing line, relates to the extreme sport of skateboarding, and creates the implication that the sports (sic) are so intense, so thrilling, and by inference so dangerous, that one would be crazy to try them."  Thus, applicant argues that "PSYCHO as a mark on clothing praising barbeque cannot possibly be said to create the same commercial impression as [a mark on] clothing celebrating skateboarding."  (Brief at 5).  In support of its position with respect to the meanings of the

marks, applicant points to its ownership of a registration for the mark PSYCHO for barbeque sauce and registrant's ownership of registrations for the marks PSYCHO and PSYCHO STICK for skateboards and accessories.

Underlying applicant's contention that the marks have different meanings and commercial impressions is the presumption that applicant and registrant use other words and/or design elements on their respective clothing.  We note that applicant's specimen is a photograph of the back of a jacket bearing, in addition to PSYCHO, the words "Bubbalou's Bodacious Bar-B-Que" and a design element featuring a pig and fire.  However, there is no evidence that registrant uses other words and/or design elements on its apparel.  In any event, we note that the issue of likelihood of confusion insofar as the registrability of applicant's mark is concerned is determined on the basis of such mark and registrant's mark as they are respectively set forth in the application and the cited registration.  See, e.g., Sealy, Inc. v. Simmons Co., 265 F.2d 934, 121 USPQ 456 (CCPA 1959); Burton-Dixie Corp. v. Restonic Corp., 234 F.2d 668, 110 USPQ 272 (CCPA 1956); Hat Corp. of America v. John B. Stetson Co., 223 F.2d 485, 106 USPQ 200 (CCPA 1955); and ITT Canteen Corp. v. Haven Homes Inc., 174 USPQ 539 (TTAB 1972).  Further, as the predecessor to our primary reviewing

8

court stated in Vornado, Inc. v. Breuer Elec. Mfg. Co., 390 F.2d 724, 727, 156 USPQ 340, 342 (CCPA 1968), "the [advertising] display of the mark in a particular style is of no material significance since the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark." Thus, it is irrelevant to the issue of likelihood of confusion in this proceeding whether applicant and/or registrant use other words and/or design elements on their respective clothing.

When we compare applicant's mark PSYCHO as applied to its clothing items and registrant's mark PSYCHO as applied to legally identical and related clothing items, we find that the marks project the same meaning. This is not a case where the goods to which the marks are applied lead to different commercial impressions for the respective marks. Cf. In re Sears, Roebuck & Co., 2 USPQ2d 1312 (TTAB 1987)[different meanings are projected by the mark CROSSOVER when used on brassieres and on ladies' sportswear, respectively]. In view of the foregoing, we find that the marks are identical in sound, appearance, meaning and commercial impression.

Applicant also argues that "the word PSYCHO is used in over 300 trade and service marks for everything from candy to motorcycle club memberships" and "[s]uch use dilutes the

9

strength of the mark and therefore limits the area of protectibility." (Brief at 9). However, applicant has presented no evidence of third-party use of PSYCHO marks and, therefore, its argument that the cited mark is entitled to a limited scope of protection on this basis is unsupported. In any event, evidence of third-party use of PSYCHO marks would not aid applicant in this case where the marks are identical and the goods are identical and otherwise closely related.

Applicant makes two final arguments. The first is that there is no evidence that registrant's mark is famous, and the second is that there is no evidence of any actual confusion although applicant and registrant have used their respective marks since 1986. Neither argument is persuasive of a different result herein. It is not necessary that a registered mark be famous to be entitled to protection against a confusingly similar mark.

Insofar as the absence of actual confusion is concerned, there is nothing in the record regarding the extent of use of either applicant's or registrant's marks. Thus, we are unable to determine if there has been any meaningful opportunity for confusion to occur in the marketplace. In any event, the test is likelihood of confusion, not actual confusion, and, as often stated, it is

unnecessary to show actual confusion in establishing likelihood of confusion.  See e.g., Weiss Associates Inc. v. HRL Associates Inc., 902 F.2d 1546, 14 USPQ2d 1840 (Fed. Cir. 1990).

In sum, we find that there is a likelihood of confusion when applicant and registrant use the identical mark PSYCHO on identical and closely related clothing items.

Refusal Based on Asserted Mutilation of the Mark

As previously mentioned, the examining attorney's position is that the mark sought to be registered is assertedly a mutilation of the mark in actual use, as shown by the specimen.  The specimen is reproduced below.



The examining attorney contends that the mark as displayed on the specimen consists of the word "Bubbalou's Bodacious Bar-B-Que," PSYCHO, and a design element featuring a pig and fire. According to the examining attorney, "the spatial proximity in this case is very significant in the commercial connotation of the mark as shown on the specimens. It could be perceived by the consumer as unitary in scope." (Brief at 7).

Applicant, on the other hand, argues that "[t]he mark PSYCHO is distinctively displayed with respect to the other elements on the garment. The other elements clearly form the background, and appear in a different and smaller type style than does the word PSYCHO. The bright colors, size and prominent position emphasize the Mark." (Brief at 11).

Upon careful consideration of the arguments of applicant and the examining attorney, it is our view that the word PSYCHO creates a separate and distinct commercial impression which indicates the source of applicant's goods apart from the remaining words and design element. Specifically, and as noted by applicant, the word PSYCHO is displayed in a different color, type style, and size such that it stands out from the remaining words and design element. The word PSYCHO has, in this display, the look of graffiti painted over a logo. It does not appear to be part

of the logo.  We find, therefore, that the word PSYCHO, alone functions as a mark for the identified goods.  See In re 1175856 Ontario Ltd., ___ USPQ2d ___ (Serial No. 78442207) (TTAB October 26, 2006) [the issue of mutilation boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct trademark in and of itself, and in making these determinations, the Board is mindful of the fact that in an application under Section 1 of the Trademark Act, the applicant has some latitude in selecting the mark it wishes to register].

**Decision**:  The refusal to register under Section 2(d) of the Trademark Act is affirmed; the refusal to register on the ground that the mark sought to be registered is assertedly a mutilation of the mark in actual use, as shown by the specimen, is reversed.