THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: May 21, 2007
PTH

# UNITED STATES PATENT AND TRADEMARK OFFICE

———

## Trademark Trial and Appeal Board

———

Fort James Operating Company
v.
Royal Paper Converting, Inc.

———

Opposition No. 91122964
to application Serial No. 75862409
filed on December 2, 1999

———

David M. Kelly and Linda K. McLeod of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. for Fort James Operating Company.

Bernard R. Gans and Brian W. Kasell of Jeffer Mangels Butler & Marmaro LLP for Royal Paper Converting, Inc.

———

Before Hairston, Kuhlke and Bergsman, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

Fort James Operating Company (opposer) has filed an opposition to the application of Royal Paper Converting, Inc. (applicant) to register the design mark shown below for "paper towels, paper face tissues, paper napkins, and toilet

paper."



Application Serial No. 75862409, filed December 2, 1999, based upon an allegation of a bona fide intention to use the mark in commerce. The application does not contain a description of the mark, but includes the following statement: "The lining in the drawing is for shading purposes only."

As grounds for opposition, opposer alleges that applicant's mark, when applied to applicant's goods, so resembles opposer's previously used and registered design marks shown below, both for "paper towels," as to be likely to cause confusion under Section 2(d) of the Trademark Act.



Registration No. 2582685 issued June 18, 2002 under the provisions of Section 2(f) of the Trademark Act. The registration contains the

following description: "The mark consists of a repetitive interlocking circle and square design. The dotted lines shown on the borders of the drawing are not a part of the mark. The stippling shown in the drawing is a feature of the mark and is not intended to indicate color." This mark will be referred to as opposer's design mark "A".



Registration No. 2582686 issued June 18, 2002 under the provisions of Section 2(f) of the Trademark Act. The registration contains the following description: "The mark consists of a repetitive interlocking circle and tetragon design. The dotted lines shown on the borders of the drawing are not a part of the mark. The stippling shown in the drawing is a feature of the mark and is not intended to indicate color." This mark will be referred to as opposer's design mark "B".

Applicant, in its answer, has denied the salient allegations in the notice of opposition.

Briefs have been filed. The record is summarized at pages 5 and 6 of opposer's brief and pages 2 and 3 of applicant's brief.

Standing and Priority

Because opposer has submitted a notice of reliance upon certified status and title copies of its pleaded

3

registrations, we find that opposer has established its standing to bring the opposition. See Cunningham v. Laser Golf Corp., 222 F.3d 943, 55 USPQ 1842 (Fed. Cir. 2000); Lipton Industries, Inc. v Ralston Purina Co., 670 F.2d 1074, 213 USPQ 185 (CCPA 1982). In addition, in view of opposer's ownership of valid and subsisting registrations of its pleaded marks, there is no issue as to opposer's priority. See King Candy Co., Inc. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).[1]

The Parties

Opposer is a leading consumer paper-products company which sells, inter alia, paper towels, nationwide. Opposer's paper towels are sold under the marks BRAWNY, MARDI GRAS, GREEN FOREST, and SO DRI. Opposer's design marks are embossed in a repeating pattern on the sheets of its paper towels. Opposer's design mark "A" appears on the front of the sheets of opposer's BRAWNY paper towels. Opposer's design mark "B" appears on the back of the sheets of opposer's BRAWNY paper towels and a smaller version

---

[1] Contrary to applicant's contention in its brief, where as here, opposer has submitted certified status and title copies of its pleaded registrations, opposer is not required to prove that the marks in such registrations acquired distinctiveness prior to the filing date of applicant's application. Rather, priority is not in issue. Applicant's additional contentions in its brief that opposer's marks are functional, non-distinctive, and lack source-indicating significance constitute an impermissible collateral attack on opposer's pleaded registrations. In the absence of a counterclaim for cancellation, these arguments cannot be considered. See Trademark Rule 2.106(b)(2)(ii) and TBMP §313.01 (2d ed. rev. 2004) and cases cited therein.

appears on its MARDI GRAS, GREEN FOREST, and SO DRI paper towels. Opposer refers to both design marks "A" and "B" alternatively as "THIRSTY O's" and "SCRUBBING CIRCLES." Opposer has continuously sold paper towels bearing its design marks since at least April 1999.

Applicant also is a paper-products company that sells, inter alia, paper towels. With respect to applicant's design mark, it is embossed in a repeating pattern on the front and back of the sheets of applicant's paper towels. Although applicant filed its application under the intent-to-use provisions, applicant subsequently first used its design mark on paper towels in May or June 2000.

Likelihood of Confusion

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

We turn then to the factors bearing on our likelihood of confusion determination in this case. We first consider the similarity or dissimilarity of the parties' goods, channels of trade, and purchasers. Applicant concedes that the goods are identical in terms of paper towels, and that such goods are sold in the same channels of trade.

(Applicant's brief at 8).[2]  Further, in view of the identity of the goods and trade channels, the goods must be presumed to be sold to the same class of purchasers.  In re Smith and Mehaffey, 31 USPQ2d 1531 (TTAB 1994).  In this case, the purchasers of the goods are ordinary consumers who would not exercise a great deal of care in their purchasing decision.  Thus, these factors favor a finding of likelihood of confusion.

We next consider the factor of fame, because fame of the prior mark or marks, if it exists, plays a dominant role in likelihood of confusion cases.  Recot, Inc. v. M.C. Becton, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000).  Opposer's evidence on fame includes opposer's revenues and advertising expenditures for its paper towels for the years 1999-2003.  This information has been submitted under seal and will not be specified here.  But we can say without doubt that the numbers are extremely impressive.  In addition, opposer has extensively advertised and promoted its paper towels in magazines and newspapers, in national and local television commercials, by way of in-store displays, coupons, circulars, NASCAR events and online banner advertisements.  Indeed, applicant does not contest

---

[2] It is not necessary that opposer prove likelihood of confusion with respect to all of the goods set forth in applicant's application.  Squirtco v. Tomy Corp., 697 F.2d 1038, 216 USPQ 937 (Fed. Cir. 1983).

that opposer's BRAWNY mark for paper towels is a strong mark. (Applicant's brief at 7).

In the recent decision of Bose Corp. v. QSC Audio Products Inc., 293 F.3d 1367, 62 USPQ2d 1303 (Fed. Cir. 2002), our principal reviewing court considered the question of whether the ACOUSTIC WAVE product mark (as opposed to the BOSE house mark) was famous for a loudspeaker music system. In finding that the ACOUSTIC WAVE product mark was famous due to 17 years use, annual sales over $50 million, annual advertising in excess of $5 million, and extensive media coverage, the court also observed, at 62 USPQ2d 1306-07:

> The record evidence demonstrates that the BOSE house mark frequently appears in the advertising and promotional materials. The product, however, is prominently identified as trademarked in the text of nearly every example of the record evidence. In the direct mail advertising and sales promotional material sent by Bose through the mail, the portion of the communication that calls for the order to be placed only refers to the ACOUSTIC WAVE product with its trademark, with no reference to Bose as a mark appearing on the order form. The consumer, when placing a $1000 order, thus asks for the trademarked product. We thus are not faced with a record on which substantially every reference to the marked product is joined with reference to the famous house mark. Instead, the consumer is presented through advertising and other promotional material with frequent references to the marked product standing alone and apart from the famous house mark. This distinction between uniform coupling of the famous house mark with the product marks and communication to consumers that typically gives significant independent reference to the product apart from the house mark is important, because in the latter instance the consumer has a basis on which to disassociate the product mark from the house mark.

In other words, in finding fame, the Court gave great weight to the fact that the ACOUSTIC WAVE product mark was used independently of the BOSE house mark in advertising and promotion of the loudspeaker music system.  As previously noted, opposer's paper towels are sold under the marks BRAWNY, MARDI GRAS, GREEN FOREST, and SO DRI.  While opposer's design marks are featured in opposer's advertising and promotional materials, the design marks generally are joined with and overshadowed by one of opposer's other marks, most often the BRAWNY mark.  For example, in the left-hand portion of a newspaper advertisement, the BRAWNY mark appears prominently in large bold letters with design mark "B" featured in the "O's" inset.



Similarly, in an advertisement in a NASCAR-related publication, the BRAWNY mark appears prominently in bold letters emblazoned across the hood of a race car along with

a photograph of several packages of opposer's paper towels with one of opposer's design marks featured in an inset on the packages.



Unlike in Bose, the record herein shows that the vast majority of the references to opposer's design marks in advertising and promotional materials are joined with and are subordinate to a reference to one of opposer's other marks, most often the BRAWNY mark. Opposer's design marks are simply overshadowed by the other marks which are almost always featured in a far more prominent manner than the design marks. This is not a case where consumers are presented through advertising and other promotional material with repeated references to opposer's design marks

independent of opposer's other marks.  Thus, notwithstanding opposer's substantial sales and advertising, we are unable to conclude that opposer's design marks have achieved the renown associated with a famous mark.  See Jockey International Inc. v. Mallory & Church Corp., 25 USPQ2d 1233, 1237 (TTAB 1992) [Plaintiff did not meet its burden of showing that its ELANCE mark was famous, notwithstanding that the sales and advertising of underwear displaying the mark was extensive, because "in most instances, the ELANCE mark is overshadowed by the clearly famous mark JOCKEY, which is almost always featured on the products and in advertising in a far more prominent manner than the 'secondary' mark ELANCE"].  In reaching our finding, we are cognizant of the fact that purchasers of opposer's paper towels are "exposed" to opposer's design marks many times since the marks are embossed on the paper towel sheets.  However, in the absence of significant advertising and promotional materials which independently feature opposer's design marks, we are not convinced that opposer's design marks have reached the status of famous marks.  In sum, we find that opposer has not met its burden of showing that its design marks are famous.  The factor of fame, therefore, is neutral.

The next factor we consider is the similarity or dissimilarity of the marks.  In doing so, we are mindful of

the proposition that when marks appear on virtually identical or closely related goods, the degree of similarity of the marks necessary to support a finding of likely confusion is not as great as when the goods are different. See Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992). Further, in the case of design marks, the question of likelihood of confusion must be decided on the basis of the visual similarity of the marks. See In re ATV Network Limited, 552 F.2d 925, 193 USPQ 331 (CCPA 1977). By definition, this is a subjective determination and must take into account the overall commercial impressions created by the marks rather than any detailed analysis thereof. See In re Joseph Lieberman and Sons, Inc., 156 USPQ 700 (TTAB 1968); and Hupp Corporation v. AER Corporation, 157 USPQ 537 (TTAB 1968).

The parties' design marks are shown below:



Applicant's mark

11



Opposer's marks

Applying these principles to the parties' marks, we find that applicant's design mark is highly similar in overall commercial impression to each of opposer's design marks, and is likely to cause confusion when used in connection with identical goods. As indicated, both parties' marks are embossed designs on paper towel sheets. The marks consist of circular-shaped designs that are repeated in an evenly-spaced pattern on the paper towel sheets. Moreover, the smaller interlocking designs in the parties' marks are identical/similar in shape.

In arguing that the parties' design marks are dissimilar, applicant contrasts the specific features of each mark in terms of the "composition," the "alignment," and "grouping" of the "units." There is no doubt but that if opposer's design marks and applicant's design mark are placed side-by-side, certain differences between them, including those enumerated by applicant, would be discernible. However, we are not convinced that purchasers

12

will undergo such a detailed analysis of the marks.  The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in their entireties that confusion as to the source of the goods offered under the respective marks is likely to result.  The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks.  See Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975).  In this case, we find that purchasers are unlikely to notice the slight differences in opposer's and applicant's design marks in the normal environment of the marketplace where purchases of paper towels are actually made.  We find therefore that the factor of the similarity or dissimilarity of the marks favors a finding of likelihood of confusion.

The next factor we consider is the number and nature of similar marks in use on similar goods.  In this regard, applicant submitted third-party evidence in the nature of five sample paper towels sheets and a photocopy of the product packaging for paper towels.  However, as noted by opposer, the probative value of this evidence is very limited because applicant presented no evidence concerning the extent to which these third-party embossed designs are used in commerce.  See Palm Bay Imports Inc. v. Veuve

13

Clicquot Ponsardin, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). Moreover, a review of the third-party designs reveals that none is similar to the designs at issue in this case. Thus, applicant's evidence does not establish that there is widespread use of similar designs on paper towels such that opposer's design marks are weak and entitled to only a narrow scope of protection. This factor, therefore, is neutral in our likelihood of confusion analysis.

There is no evidence of actual confusion between opposer's and applicant's design marks. However, that kind of evidence is extremely difficult to acquire and, in any event, such evidence is not required in order to establish likelihood of confusion. See Weiss Associates Inc. v. HRL Associates Inc., 902 F.2d 1546, 14 USPQ2d 1840 (Fed. Cir. 1990; Gillette Canada Inc. v. Ranir Corp., 23 USPQ2d 1768 (TTAB 1992); and Guardian Products Co. Inc. v. Scott Paper Co., 200 USPQ 738 (TTAB 1978). Further, the absence of evidence of actual confusion herein may be explained by the fact that applicant has used its mark for a relatively short period of time. Under the circumstances, we find that this factor is neutral.

Two additional matters require comment. First, applicant argues that opposer's marks are always used in conjunction with other trademarks (e.g. BRAWNY), thereby eliminating the likelihood that purchasers would be

14

confused. It is true that in the exhibits made of record, additional trademarks do appear on opposer's products. As the Board indicated in The Procter & Gamble Company v. Keystone Automotive Warehouse, Inc., 191 USPQ 468, 474, "it is settled that a product label can bear more than one trademark without diminishing the identifying function of each portion." The issue of likelihood of confusion in this case involves the marks shown in opposer's registrations and the mark shown in applicant's application. See Hat Corp. of America v. John B. Stetson Co., 223 F.2d 485, 106 USPQ 200 (CCPA 1955); and ITT Canteen Corp. v. Haven Homes Inc., 174 USPQ 539 (TTAB 1972). Thus, in reaching our determination herein, we have not considered the additional marks that appear on opposer's products.

Second, applicant's contention that opposer had ample opportunity to conduct consumer surveys regarding potential confusion is unpersuasive. Surveys in this regard are not required in Board proceedings which determine the right to register only. See Hilson Research, Inc. v. Society for Human Resources Management, 27 USPQ 1423 (TTAB 1993).

Based on the identity of the goods, trade channels and purchasers; and the similarity in opposer's design marks and applicant's design mark, we find that confusion is likely.

**Decision**: The opposition is sustained and registration to applicant is refused.

15