THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
September 4, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re SL&E Training Stable, Inc.
_____

Serial No. 78806669
_____

Anthony F. Lo Cicero of Amster, Rothstein & Ebenstein LLP
for SL&E Training Stable, Inc.

George M. Lorenzo, Trademark Examining Attorney, Law Office
101 (Ronald R. Sussman, Managing Attorney).
_____

Before Cataldo, Bergsman and Ritchie de Larena,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Edelman Shoe Company, LLC, filed an intent-to-use application for the mark SAM EDELMAN, in standard character format, for "luggage, handbags, purses, wallets, all-purpose tote bags, all-purpose sports bags, backpacks," in Class 18.[1] The mark SAM EDELMAN identifies an individual named Sam Edelman whose consent to register has been made of record. In addition, SL&E Training Stable, Inc.

---

[1] Edelman Shoe Company, LLC assigned the mark and the application to SL&E Training Stable, Inc. on August 7, 2006. The assignment was recorded on August 11, 2006, at reel 3367, frame 0586.

("applicant") is the owner of Registration No. 3271895 for the mark SAM EDELMAN for "footwear, namely, boots, shoes, slippers and sandals," in Class 25.

The Trademark Examining Attorney refused registration under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. §1052(d), on the ground that applicant's mark is likely to cause confusion with the mark EDELMAN for "articles made from leather and imitations of leather, and not included in other classes, namely - - wallets, handbags, traveling bags, luggage trunks, umbrellas, harnesses and saddlery; animal skins and hides; tanned leather adapted for use in upholstering furniture, namely – - seating for use in airplanes, cars, and other vehicles," in Class 18.[2]

Applicant argues that there is no likelihood of confusion because there is a "strong public policy to allow individuals to use their names."[3]  Moreover, applicant asserts that this public policy is especially applicable in this case where applicant has built a reputation in the relevant industry.[4]  Contrary to applicant's argument, however, neither our reviewing court, the Court of Appeals for the Federal Circuit, nor its predecessor, the Court of

---

[2] Registration No. 3000104, issued September 27, 2005.
[3] Applicant's Brief, p. 3.
[4] *Id.*

Customs and Patent Appeals, have adopted such a "strong public policy."[5] *See Nina Ricci S.A.R.L. V. E.T.F. Enterprises Inc.,* 889 F.2d 1070, 12 USPQ2d 1901 (Fed. Cir. 1989) (VITTORIO RICCI for handbags, clothing and retail store services in the field of clothing is likely to cause confusion with NINA RICCI for clothing and accessories even though Vittorio Ricci was the name of defendant's principal); *Ford Motor Co. v. Ford,* 462 F.2d 1405, 174 USPQ 456, 458 (CCPA 1972) ("the interest in allowing an entrepreneur to use his own surname as a trademark on his

---

[5] In this regard, we note that applicant has not cited any cases from the Court of Appeals for the Federal Circuit or Court of Customs and Patent Appeals. Also, we note that the cases relied on by applicant relate to a defendant's right to use a personal name and not the right to register a personal name as a trademark. Finally, the cases cited in applicant's brief do not, in fact, support its assertion that they show "a strong public policy to allow individuals to use their [an individual's] names" because they do not stand for a party's unfettered right to use a name as a trademark. *Ptak Bros. Jewelry Inc. v. Ptak,* 83 USPQ2d 1519, 1524 (S.D.N.Y. 2007) (a proper name merits protection if it has acquired distinctiveness; the evidence showed it was common to have numerous family-owned jewelry businesses with the same surname); *Johnny's Fine Foods Inc. v. Johnny's Inc.,* 286 F.Supp.2d 876, 68 USPQ2d 1505, 1513 (M.D. Tenn. 2003) (the right to use one's personal name will be enjoined to the extent necessary to prevent confusion); *Henegan Construction Co. v. Heneghan Contracting Corp.,* 63 USPQ2d 1984, 1988 (S.D.N.Y. 2002) (a personal name or surname is entitled to protection if it has acquired distinctiveness; defendant enjoined from using the surname "Heneghan," or anything similar, as a trade name or service mark); *M. Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc.,* 17 F.Supp.2d 249, 252 (S.D.N.Y. 1998) (where senior user establishes that personal name is a strong mark, it is entitled to trademark protection; evidence showed other members of the Fabrikant family have used their family name in the jewelry business, and therefore plaintiff sought only to have defendant use the Fabrikant surname with a personal name).

goods must give way to the more compelling public and private interests involved in avoiding a likelihood of confusion or mistake as to source where use of the surname leads to such confusion or mistake"). *See also Justin Industries, Inc. v. D.B. Rosenblatt, Inc.,* 213 USPQ 968, 976 (TTAB 1981) ("the right to use one's name in his business may be circumscribed if it conflicts with a mark previously used by another and is likely to cause confusion as to the origin of the business or of the goods sold thereunder"); *Jack Winter Inc. v. Lancer of California, Inc.,* 183 USPQ 445, 446 (TTAB 1974) (DAVID WINTER for clothing is likely to cause confusion with JACK WINTER for clothing); *Girard-Perregaux & Cie, S.A. v. Perregaux,* 122 USPQ 95, 96 (Comm'r. Pats. 1959) ("Paul Perregaux" is likely to be confused with "Girard Perregaux" and "Perregaux"). Thus, the fact that SAM EDELMAN is an individual's name does not give applicant an unfettered right to use that name if it conflicts with a previously registered mark.

Our determination of likelihood of confusion under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177

4

USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks").

A.  The similarity or dissimilarity and nature of the goods.

In an *ex parte* appeal, likelihood of confusion is determined on the basis of the goods as they are identified in the application and the cited registration. *In re Elbaum,* 211 USPQ 639, 640 (TTAB 1981); *In re William Hodges & Co., Inc.,* 190 USPQ 47, 48 (TTAB 1976). *See also Octocom Systems, Inc. v. Houston Computers Services Inc.,* 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the

particular channels of trade or the class of purchasers to which the sales of goods are directed").

In this case, the goods identified by applicant and the registrant are identical in part. Both descriptions of goods include wallets and handbags. In addition, applicant has listed luggage while the registration includes luggage trunks. Because luggage encompasses luggage trunks, these products are, in effect, identical. Finally, the applicant and the registrant have also identified closely related goods: applicant has listed all-purpose tote bags and sport bags and the registration includes traveling bags. Traveling bags and both all-purpose tote bags and sport bags can be used for similar purposes and are therefore, to some extent, competitive products.

Because there are no restrictions in applicant's description of goods, applicant's wallets and handbags encompass registrant's wallets and handbags made of leather and imitations of leather. In addition, applicant's luggage encompasses registrant's luggage trunks. *See Squirtco v. Tomy Corp.,* 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983) ("There is no specific limitation and nothing in the inherent nature of Squirtco's mark or goods that restricts the usage of SQUIRT for balloons to promotion of soft drinks. The Board, thus, improperly read

6

limitations into the registration"); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992); *In re Elbaum,* 211 USPQ 211 USPQ 639, 640 (TTAB 1981).

B.  The similarity or dissimilarity of likely-to-continue trade channels.

Because there are no limitations as to channels of trade or classes of purchasers in either the application or the registration, it is presumed that the registration and the application encompass all of the goods of the type described in the description of goods, that the goods so identified move in all channels of trade normal for those goods, and that the products are available to all classes of purchasers for the listed products.  *See In re Linkvest S.A.,* 24 USPQ2d at 1716.

In addition, because the goods in the application and the cited registration are identical in part, we must also presume that the channels of trade and classes of purchasers are the same.  *See Genesco Inc. v. Martz,* 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade"); *In re Smith and*

*Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers"). In view of the foregoing, we must presume that at least the goods identified in the application and the registration that are legally identical move in the same channels of trade and will be sold to the same classes of consumers. Also, to the extent that traveling bags and all-purpose tote bags and sport bags are competitive products, they may also be sold in the same channels of trade and to the same classes of consumers.

C.   The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *In re E. I. du Pont De Nemours & Co., supra.* In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 9 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988). In comparing the marks, we are mindful that where, as here, the goods are identical in part or otherwise closely related, the degree of similarity

necessary to find likelihood of confusion need not be as great as where there is a recognizable disparity between the goods. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Real Estate One, Inc. v. Real Estate 100 Enterprises Corporation,* 212 USPQ 957, 959 (TTAB 1981); *ECI Division of E-Systems, Inc. v. Environmental Communications Incorporated,* 207 USPQ 443, 449 (TTAB 1980).

In addition, the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods offered under the respective marks is likely to result. *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Restaurants Inc. v. Morrison Inc.,* 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd unpublished,* No. 92-1086 (Fed. Cir. June 5, 1992). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *Winnebago Industries, Inc. v. Oliver & Winston, Inc.,* 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975). In this case, the relevant public would be

the general public who buy wallets, handbags, luggage, and tote or sport bags.

Applicant's mark SAM EDELMAN incorporates the entire registered mark EDELMAN. The first name "Sam" in applicant's mark modifies the surname "Edelman," in effect, telling which Edelman it is, and therefore emphasizes the "Edelman" portion. Because the marks share the surname "Edelman," which is the only element in the registered mark and is a clearly recognizable and prominent element in applicant's mark, we find that there are strong similarities between the marks in terms of appearance, sound, meaning and commercial impression.

Moreover, consumers or members of the trade viewing the registrant's mark EDELMAN may see it as an abbreviated form of applicant's mark SAM EDELMAN. *Nina Ricci S.A.R.L. v. E.T.F. Enterprises Inc.,* 889 F.2d 1070, 12 USPQ2d 1901, 1903 (Fed. Cir. 1989) ("the Board has previously recognized the practice in the fashion industry of referring to surnames alone," and therefore the RICCI surname is the dominant and significant part of opposer's mark); *Marshall Field & Co. v. Mrs. Fields Cookies,* 25 USPQ2d 1321, 1333 (TTAB 1992) ("companies are frequently called by shortened names, such as Penney's for J.C. Penney's, Sears for Sears and Roebuck . . . , Ward's for Montgomery Ward's, and

Bloomies for Bloomingdale's"); *Big M. Inc. v. United States Shoe Corp.,* 228 USPQ 614, 616 (TTAB 1985) ("[W]e cannot ignore the propensity of consumers to often shorten trademarks and, in the present case, this would be accomplished by dropping the 'T.H.' [in T.H. MANDY] in referring to registrant's stores"); *Polo Fashions, Inc. v. La Loren, Inc.,* 224 USPQ 509, 512 (TTAB 1984) ("Lauren" is a shorthand term for Ralph Lauren); *Nina Ricci S.A.R.L. v. Haymaker Sports, Inc.,* 134 USPQ 26,28 (TTAB 1962) ("it is common knowledge that various couturiers such as Christian Dior, Huber de Givenchi, and Jacques Fath are frequently referred to by their surnames alone").

In view of the foregoing, we find that applicant's mark is similar in appearance, sound, connotation and commercial impression to the registered mark.

D.   The conditions under which and buyers to whom sales are made (*i.e.,* impulse vs. careful, sophisticated purchasing).

Based on its interpretation of two third-party cases, applicant contends, without any evidence, that consumers of handbags are sophisticated, and therefore confusion is not likely.[6]   Despite the findings in those cases, as we indicated above, there are no restrictions or limitations

---

[6] Applicant's Brief, p. 6.

in the description of applicant's goods or the goods in the cited registration. Therefore the description of goods in the application and registration is broad enough to encompass inexpensive wallets, handbags, luggage and traveling bags sold in discount stores to consumers who may not exercise a high degree of care. Accordingly, the conditions under which sales are made is a likelihood of confusion factor that weighs in favor of finding that there is a likelihood of confusion.

E.    Whether applicant's ownership of a registration for the identical mark for footwear justifies registration?

Applicant is the owner of Registration No. 3271895 for the mark SAM EDELMAN for footwear, namely, boots, shoes, slippers and sandals. Applicant contends that the footwear identified in its registration is related to the products identified in its application, and therefore justifies the registration of the application at issue. Applicant asserts that in the context of proving acquired distinctiveness, it may rely on a prior registration for the same mark for similar goods.[7] In essence, applicant is arguing that the Office should be estopped from refusing to register the

---

[7] Applicant's September 7, 2007 Request for Reconsideration, pp. 7-8; Applicant's Brief, p. 3. Whether applicant's mark has acquired distinctiveness is not controlling on the issue of likelihood of confusion. *In re Bissett-Berman Corp.,* 476 F.2d 640, 177 USPQ 528, 529 (CCPA 1973).

application at issue when it has previously registered the identical mark for related goods.

However, "[t]his Office should not be barred from examining the registrability of a mark when an applicant seeks to register it for additional goods as it does here, even when the additional goods are closely related to those listed in a prior registration." *In re Sunmarks Inc.*, 32 USPQ2d at 1472. This Board has the authority and duty to decide an appeal from a final refusal to register, and this duty may not be delegated by adopting the conclusion reached by another examining attorney on a different record. *In re Sunmarks Inc.*, 32 USPQ2d at 1472, *quoting In re BankAmerica Corp.*, 231 USPQ 873, 876 (TTAB 1986). Accordingly, the issuance of the prior registration is not controlling here.

F.  Whether the renown of Sam Edelman justifies registration?

Applicant argues that its mark is already well-known because it is the name of applicant's principal.[8] In its Request for Reconsideration, applicant submitted seven (7) newspaper articles referencing Sam Edelman.[9] These articles

---

[8] Applicant's Brief, pp. 2, 3, and 5.
[9] Applicant also attached the newspaper articles to its brief under the mistaken belief that it is a convenience to the Board. It is not. When considering a case for final disposition, the entire record is readily available to the panel. Therefore attaching exhibits that are already of record only adds to the

are evidence that Sam Edelman was referenced in seven articles. However, they do not prove that Sam Edelman is well-known in the fashion industry. Apparently, in or around 1987, Sam and Libby Edelman created the "Caroline" ballet flat that sold in the millions. However, it is not apparent from these articles that consumers know that Sam Edelman created the "Caroline" or that consumers recognize Sam Edelman.

Finally, even if applicant had proven that Sam Edelman had a high degree of recognition in the fashion industry, applicant does not make clear how the renown of Sam Edelman would diminish the likelihood of confusion with the registered mark and, in any event, it would not change the result.

G.   Balancing the factors.

In view of the facts that the goods at issue are identical in part, or otherwise closely related, that we must presume the goods move in the same channels of trade and are sold to the same consumers, and that the marks are similar in appearance, sound, meaning and commercial

---

bulk of the file. Because we must determine whether attachments to the brief were properly made of record, citation to the attachments requires an examination of the attachment and then an attempt to locate the same evidence in the record developed during the prosecution of the application, requiring more time and effort than would have been necessary if citations were directly to the record.

impression, applicant's mark SAM EDELMAN for "luggage, handbags, purses, wallets, all-purpose tote bags, all-purpose sports bags, backpacks" is likely to cause confusion with the mark EDELMAN for "articles made from leather and imitations of leather, and not included in other classes, namely - - wallets, handbags, traveling bags, luggage trunks, umbrellas, harnesses and saddlery; animal skins and hides; tanned leather adapted for use in upholstering furniture, namely – - seating for use in airplanes, cars, and other vehicles."

Decision:  The refusal to register is affirmed and registration to applicant is refused.