49 CCPA

**WINCHARGER CORPORATION,**
Appellant,

v.

**RINCO, INC., Appellee.**

**Patent Appeal No. 6742.**

United States Court of Customs
and Patent Appeals.

Jan. 12, 1962.

Hugh H. Drake, Chicago, Ill. (Homer R. Montague, Washington, D. C., of counsel), for appellant.

Dos T. Hatfield, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge JOSEPH R. JACKSON, Retired.

MARTIN, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 126 USPQ 65, dismissing appellant's opposition to appellee's application for the registration of "RINCO" for goods, apparently designated at the time of filing the opposition as "apparatus and components thereof for supplying and/or measuring electrical characteristics, namely, resistance, capacitance, inductance, reactance, dissipation factor and the reciprocals thereof, voltage, current, phase angle, frequency, power and power factor." The application was filed on November 14, 1957 and alleges use since February 19, 1957.

The basis for appellant's opposition is that it has, for over seventeen years before the date of the notice of opposition, used the mark "WINCO" on and in connection with electrical apparatus. It alleges that it has, since a date prior to February 19, 1957, the date of first use asserted by appellee, used that mark on or in connection with motors, generators, dynamotors, inverters, converters, prime-mover-controls, engine driven generators, and control units and measuring instru-

ment cabinets therefor, wind-driven generators, and parts of the foregoing.

Appellant has been granted registrations of "WINCO" for electrical dynamotors, generators, converters, and motors;[1] wind-driven power apparatus and parts thereof, particularly wind-driven electric current generator apparatus and parts thereof;[2] engine-driven power apparatus and parts thereof, particularly engine-driven electric current generator apparatus and parts thereof;[3] and dynamo-electric machines, particularly motors, generators, dynamotors, inverters, and converters; prime-mover-driven electric generators, particularly engine-generator combinations and starter-control units therefor; prime-mover controls including engine idling-control units; electric power supplies; wind-electric equipment, particularly wind-driven generator apparatus and components thereof; and parts of any of the foregoing.[4]

It is obvious from the record that appellant, as held by the board, is the prior user.

Subsequent to the taking of testimony by the parties, but before final hearing, appellee moved to amend its application to change the description of goods to "voltage dividing instruments, precision calibrated variable potentiometers and rheostats, and bridge-type impedance measuring instruments." This motion was denied "without prejudice to any right of the applicant to seek to amend" the application "after determination of this proceeding."

The board in its decision found as follows:

"The record shows that opposer has, since it was organized in January, 1935, been engaged in the manufacture of wind electric systems, radio, radio and television antenna towers, fractional horsepower motors, portable and standby engine-generators, and rotary electrical

equipment for industrial and military use. These products have been sold under various brand names, of which the principal ones are 'WIN-CHARGER' and 'WINCO', throughout the United States and in certain foreign countries through opposer's sales engineers, manufacturers' representatives and wholesale distributors. Opposer has, since about 1941, continuously used the notation 'WINCO' as a trademark for its electrical power supply equipment, including motors, generators, dynamotors, inverters and converters, engine-generator combinations and control units and panels therefore [sic], prime mover controls, wind-driven generators, and parts and components therefor. Opposer's 'WINCO' generator controls and control units incorporate electronic equipment such as meters and relays, but the record does not show that opposer manufactures and/or sells these components as such. 'WINCO' dynamotors, alterdynes, altermotors, generators, transistorized power supplies, static power supplies, motors, and generator sets have been sold by opposer directly to the Armed Forces and certain government agencies and on a sub-contract basis to government contractors for use as components of telemetering, guided missile, transceiver, fire control, homing, communication, and navigation equipment and systems. In addition, opposer through its sales representatives sells 'WINCO' universal motors, DC motors, AC and DC generators, and portable generators to manufacturers of consumer goods for use as power components for a wide variety of products such as calculating machines, power tools, vacuum cleaners, phonographs, farm equipment, and the like. Gross sales of all of opposer's products, for the

---

**1.** Registration No. 397,887, issued Sept. 29, 1942.

**2.** Registration No. 541,377, issued Apr. 24, 1951.

**3.** Registration No. 586,217, issued Mar. 2, 1954.

**4.** Registration No. 671,116 issued Dec. 16, 1958.

period from 1951 through 1958, exceeded thirty-one million dollars, of which approximately ninety-eight percent involved shipments of 'WINCO' products. 'WINCO' electrical power equipment has been extensively advertised and promoted by opposer in nationally circulated general and technical publications, including 'Military Electronics', 'Electronics', 'Electronics Design', 'Aviation Week', 'Newsweek', 'U. S. News and World Reports', and 'Thomas Register', catalogues, brochures, technical bulletins, and mailing pieces, and by opposer, its distributors and manufacturers' representatives in newspapers. Opposer has, since 1941, spent over one million dollars in advertising its products under all brand names, and it is estimated that, since 1951, a sum in excess of five hundred and fifty thousand dollars has been expended on advertising material featuring its 'WINCO' products.

"Applicant, formerly known as Research Instruments Corporation, has, since February, 1957, manufactured and sold under the mark 'RINCO' precision electronic instruments, namely, potentiometers, rheostats, voltage dividers, and impedance bridges. These products are precision measuring and testing equipment designed for research and development use in aircraft designing and in electronic, physics, or medical laboratories. They have been sold directly and through manufacturers' representatives to the Armed Forces and government agencies, to universities, and to commercial concerns, including some government agencies and industrial concerns to whom opposer sells its 'WINCO' power supplies. Applicant's 'RINCO' precision electronic instruments have been advertised in trade publications including 'Electronics', and 'Electronics Design', in catalogues, and through direct mailing of descriptive literature."

These findings of the board are uncontroverted by appellee, which did not file a brief and was not represented at oral argument.

In dismissing the opposition, the board stated that "Power supply equipment such as motors, generators and the like and precision electronic equipment such as potentiometers and rheostats are radically different products intended for completely different purposes." Referring to "the nature of and the differences in the goods of the parties, together with the fact that these products are of a character which would ordinarily be purchased with care by technically trained people, and the differences between the marks 'RINCO' and 'WINCO'," the board concluded that "confusion or mistake or deception of purchasers would not be reasonably likely to occur."

In a footnote to its decision, the board stated that the amendment of the description of goods in appellee's application to "voltage dividing instruments, precision calibrated variable potentiometers and rheostats, and bridge-type impedance measuring instruments," referred to above, "is supported by the record and accordingly is entered."

Appellant urges error in the board's allowing amendment of the designation of appellee's goods. It points out that the amended designation was proposed in a motion brought after completion of its testimony.

It is further urged by appellant that, even considering the amended designation, appellee's goods are so related to appellant's wide variety of electrical products as to make confusion as to source likely. In support of this position, appellant contends that the prospective purchasers and the manner of marketing of the two parties' products are the same. It urges also that the goods are frequently purchased through purchasing agents who would be less discriminating than engineers who might use the goods.

There is present here the question of the legality of the board in an opposition proceeding ordering that an amendment

to the original application be entered after the hearing by the board as to the specific goods to be identified by the mark without further publication. However, this issue need not be resolved at this time in view of the conclusion we have reached on the subject matter of the controversy. For the purpose of this discussion only we shall assume the application reads in accordance with the amendment entered by the board.

With this in mind, we shall consider first the two words themselves. Obviously, the only difference between WINCO and RINCO is the first letter. It is our opinion that this difference is not significant. Although the words are not identical, we believe that they are so similar that purchasers would be compelled to exercise extreme caution not to mistake one for the other. It should be remembered that purchasers usually do not have the opportunity to simultaneously compare two marks but must recall one or the other separately at different times which in this situation would make the avoidance of error quite difficult. Therefore, we believe that if the goods are similar the marks would cause confusion among purchasers.

As for the products of the appellee, even though the amendment entered by the board limited those goods to a much greater degree than specified in the original application, we are of the opinion that the goods are so closely related that purchasers of the respective products could reasonably expect them to have a common source in view of a similarity of the marks. The products are all within the field of electrical apparatus and in some instances devices similar to those manufactured by appellee are used in connection with the various items produced by appellant. Inserting the word "precision" in the identifying description of the goods does not change the situation. "Precision" is a relative word and could be considered here more as complimentary rather than explanatory of appellee's products.

It is true that in most instances technicians would use the products of either party and they are a discriminating group of people but that does not eliminate the likelihood of purchaser confusion here. Being skilled in their own art does not necessarily preclude their mistaking one trademark for another when the marks are as similar as those here in issue, and cover merchandise in the same general field.

For the foregoing reasons we reverse the decision of the Trademark Trial and Appeal Board.

Reversed.