50 CCPA

**REPUBLIC STEEL CORPORATION,**
Appellant,

v.

**M.P.H. MANUFACTURING CORPORATION, Inc., Appellee.**

Patent Appeal No. 6869.

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

Emory L. Groff, Emory L. Groff, Jr., Washington, D. C., for appellant.

Marzall, Johnston, Cook & Root, Lloyd C. Root, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

ALMOND, Judge.

■ This is an appeal from the decision of the Trademark Trial and Appeal Board (130 USPQ 360), dismissing appellant's opposition to an application for registration of the trademark "TRUSS-SKIN," for sheet metal structural members for prefabricated buildings. Appellant took no testimony, relying only upon its registration No. 557,946 granted April 22, 1952, to its predecessor Truscon Steel Company for the trademark "TRUS-CON." Appellee took testimony. In this connection we point out, however, that appellant-opposer seeks to rely on certain documentary material attached to the notice of opposition. The Trademark Trial and Appeal Board, invoking Rule 2.126 which provides that " * * * exhibits attached to pleadings * * * [are not] considered as evidence * * * unless identified and introduced in evidence as other exhibits," declined to consider the documentary material. Ac-

cordingly, we will not consider these exhibits.

The record discloses that appellee's mark "TRUSS-SKIN" is applied to elongated metal members which are deeptroughed and arched longitudinally. The elements may be joined together to form an arch to provide a building or roof system of any desired length. The arches are self-supporting and their use displaces the function of internal braces, trusses, or posts. These members are the only items to which the mark is applied.

Appellant's trademark "TRUSCON," registered April 22, 1952, is applied to products made of steel and other materials, described by the board as including:

" * * * plain deformed and sheared steel bars as reinforcing elements for concrete; sheet steel forms of longitudinally arched formation to be laid side by side to provide continuous long span construction and individual units of both longitudinally and transversely arched formation to be used as elements of concrete floor construction; column-hooping for reinforcing concrete columns; pressed-steel beams, joists, studs, plates, and channels for use in walls, ceilings, or floors of all types of building; windows and parts thereof; doors, panels, and partitions; joist and wall hangers; trusses; columns, and girders; steel roofing and steel flooring; panels of insulation externally covered by steel sheets for use in walls, ceilings and roofs; and stairs and treads."

There is no issue of prior use. Appellant's use of "TRUSCON" antedates appellee's use of "TRUSS-SKIN" by many years.

The basic issue is: Whether the concurrent use by appellee of its mark on the goods described, would be likely to cause confusion or mistake or to deceive purchasers in view of the use by appellant of its mark on the products listed in its registration.

In dismissing the opposition, the board found and held that:

"Applicant's 'TRUSS - SKIN' arched metal panels and the various steel products identified in opposer's registration ordinarily would be promoted and advertised to architects, builders, contractors, and other members of the construction industry; applicant's panels and many of opposer's 'TRUSCON' steel products are competitive in character to the extent that the use of applicant's product would eliminate the need for such products as steel trusses; columns and girders; steel roofing; steel joists and wall hangers; and panels of insulation externally covered by steel sheets for use in walls, ceilings, and roofs; and applicant's panels and opposer's 'TRUSCON' windows, doors, partitions, reinforcing rods, and like goods could be used in the same structure. Under these circumstances, applicant's panels and opposer's steel products are likely to be attributed to a common source if they were to be sold under the same or similar marks.

"'TRUSS-SKIN' and 'TRUSCON', however, do not look alike, and while they are somewhat similar in sound, they are readily distinguishable in this respect. Moreover, if any suggested meaning could be attributed to each of these marks, it is apparent that one would not suggest the other. Considering, therefore, the differences between the marks 'TRUSS-SKIN' and 'TRUSCON' and that goods of the type marketed thereunder usually are purchased with care and by technically trained and/or informed persons, it is concluded that confusion, mistake or deception of purchasers is not reasonably likely to occur."

Appellant contends that the marks "TRUSCON" and "TRUSS-SKIN" are confusingly similar in sound, appearance, and meaning. Both marks have in common "TRUS" and "TRUSS," but we cannot conclude that this resemblance is determinative of the issue here. Looking at the marks in their entirety, as we must do, they are strikingly dissimilar in appearance. They simply do not look alike. "TRUSCON" is one word, while "TRUSS-SKIN" consists of two hyphenated words conveying an impressionable distinction in appearance. "TRUSS" and "SKIN" are commonly used words of the English language with definite meanings. "TRUSCON" is not identified with the English language and is devoid of meaning. It would strain credulity to endeavor to merge the two marks together in sound. It appears to us that normal or casual pronunciation would distinctly emphasize a difference in sound.

Appellant urges that when the two marks are applied to competitive goods in the field of construction materials, they convey similar mental and commercial impressions of a trussed construction.

It is our view that "TRUSCON" of itself carries no connotation so as to stimulate any image or suggestion when looked upon by the average viewer. Appellee's goods are advertised as being "trussless" since they are self-supporting arched structural members. Appellee produced testimony of record that "the actual derivation of the expression originally came from the field, exactly where I don't know, but it was around the time of one of our first roof systems and in the expression itself, 'TRUSS-SKIN,' we connote a skin with a truss built in." It would be difficult, indeed, to conclude that a member advertised as trussless would convey an impression, even to the most unwary, of a trussed construction. If, as appellant contends, "TRUSCON" conveys an impression of a trussed construction, both the record and logic negates such an attribute to "TRUSS-SKIN."

The decision of this court in Goodall-Sanford, Inc. v. Tropical Garment Manufacturing Co., 275 F.2d 736, 47 CCPA 821, carries much persuasion. The court said:

" * * * 'Royal Palm' does not look or sound like 'Palm Beach'; and the two marks do not stimulate similar associations. These facts lead

to a conclusion that there is no likelihood of confusion or mistake of purchasers."

The use of the mark on appellee's goods began in January 1957. Appellee's trade in goods bearing the mark haš been nationwide with considerable foreign distribution aggregating a value in excess of a million dollars annually. Advertising costs have exceeded two-hundred thousand dollars. The record discloses that no instance of actual confusion among purchasers as to the sources of the goods bearing their respective marks has ever come to the attention of the appellee. In addition to this circumstance, the goods are of a character usually purchased with care and discernment by technically trained persons.

Appellant urges that all doubts should be resolved in its favor on the theory of prior use and the good will which attaches to "TRUSCON," citing the case of Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 24 CCPA 790. As we have pointed out, we perceive no doubt that the two marks are distinctively different in spelling and appearance as well as in sound of pronunciation. Dissimilarity is again punctuated in consideration of the origin and connotation of appellee's mark when compared with the absence of connotation of appellant's mark.

Appellant cites Bordo Products Co. v. B. A. Railton Co., 173 F.2d 981, 36 CCPA 1059, and Wincharger Corp. v. Rinco, Inc., 297 F.2d 261, 49 CCPA 849. An examination of these cases discloses that they are not in point when measured in the light of the facts and circumstances of the instant case. Bordo presents an obvious distinction as to the class of purchasers. In the Wincharger Corp. case the marks "WINCO" and "RINCO" are so similar in appearance, spelling and sound as to smother distinction when pronounced. When two marks are so nearly identical, they might well produce confusion even among a discriminating group of purchasers.

We agree with the board that the goods of the type to which the marks "TRUSS-SKIN" and "TRUSCON" attach are usually purchased with care by technically trained and/or informed persons; even though they are competitive in character to the extent that the use of appellee's product would eliminate the need for some of the products of the appellant and appellee's panels and some of appellant's goods could be used in the same structure.

In our opinion the marks "TRUSS-SKIN" and "TRUSCON" are readily distinguishable by reason of their dissimilarity in appearance, sound, meaning and connotation. It is our judgment that the concurrent use of the marks on the products with which they are identified would not be likely to cause confusion or mistake or to deceive purchasers as to the source or origin of the goods.

We therefore *affirm* the decision of the Trademark Trial and Appeal Board.

Affirmed.