THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: April 30, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**

————

*In re Information Builders Inc.*

————

Serial No. 87753964

————

Howard F. Mandelbaum of Mandelbaum Silfin Economou LLP,
  for Information Builders Inc.

Cynthia R. Smith, Trademark Examining Attorney, Law Office 107,
  Leslie Bishop, Managing Attorney.

————

Before Zervas, Wolfson, and Pologeorgis,
  Administrative Trademark Judges.

Opinion by Pologeorgis, Administrative Trademark Judge:

Information Builders Inc. ("Applicant") seeks registration on the Principal

Register of the composite mark for the following goods and

services, as amended:

> Computer software for distributing and managing information from
> databases, and for building decision support and business intelligence
> applications, in International Class 9; and

Computer system design services for building information systems with data access and database management, and knowledge-based systems in a wide variety of fields, in International Class 42.[1]

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground of likelihood of confusion with the design mark  registered on the Principal Register for, inter alia,

Computer software platforms and applications for using and leveraging data to better manage business and government operations; computer software that provides real-time, integrated business management intelligence by combining information from various databases and presenting it in an easy-to-understand user interface; computer software that provides interactive real time business data mining capability in an easy to understand user interface, in International Class 9; and

Computer software consultation; consulting services in the field of design, selection, implementation and use of computer software systems for others; computer software development; design, development and implementation of software; installation of computer software; maintenance of computer software; periodic upgrading of computer software for others, in International Class 42.[2]

---

[1] Application Serial No. 87753964, filed on January 12, 2018, based on an allegation of a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The description of the mark reads as follows: "The mark consists of the words 'INFORMATION BUILDERS' with the first 'O' in 'INFORMATION' consisting of a design containing three parallel slanted lines projecting through diametrically opposite openings in a broken circle." Color is not claimed as a feature of the mark. Applicant has submitted the following disclaimer: "No claim is made to the exclusive right to use INFORMATION or BUILDERS apart from INFORMATON [sic] BUILDERS or apart from the mark as shown."

[2] Registration No. 3707266; registered on November 10, 2009; renewed. The registration includes the following description of the mark: "The mark consists of three diagonal bars appearing one above the other and surrounded by a circle with two breaks, one break appearing at the high end of the top diagonal bar and one break appearing at the low end of

Additionally, pursuant to Section 6(a) of the Trademark Act, 15 U.S.C. 1056(a), the Examining Attorney refused registration for Applicant's failure to comply with the requirement to provide a disclaimer that comports with the standardized disclaimer format.

When the refusals were made final, Applicant appealed and requested reconsideration. When the request for reconsideration was denied, this appeal resumed. The appeal is fully briefed. For the reasons explained below, we affirm both refusals.[3]

## I.   Preliminary Matter - Evidentiary Objection

We first turn to an evidentiary objection lodged by the Examining Attorney regarding evidence presented by Applicant for the first time with its appeal brief. Specifically, the Examining Attorney objects to printouts of two registrations submitted as part of Exhibit E of Applicant's brief, namely, Registration Nos. 5477708 and 5481783.[4] These printouts were purportedly submitted to support Applicant's

---

the bottom diagonal bar." Color is not claimed as a feature of the mark.

The cited registration also identifies services in International Class 35, namely, "business consultation services." The Examining Attorney's Section 2(d) refusal, however, does not concern the Class 35 services identified in the cited registration.

[3] The TTABVUE and Trademark Status & Document Retrieval ("TSDR") citations refer to the docket and electronic file database for the involved application. All citations to the TSDR database are to the downloadable .PDF version of the documents.

[4] The evidence attached to Exhibits A-D of Applicant's Brief and all other evidence provided in Exhibit E (other than the two registrations subject to the Examining Attorney's objection) were previously and properly submitted during the prosecution of Applicant's involved application.

Exhibits to briefs that merely duplicate evidence already in the record are of little or no use in an ex parte proceeding. They are neither a convenience, nor a courtesy. When considering an appeal for final disposition, the entire record is readily available to the panel. Because we

argument concerning the alleged weakness of the cited mark.

It is well-settled that the record in an ex parte proceeding should be complete prior to appeal. Trademark Rule 2.142(d); 37 C.F.R. § 2.142(d). Exhibits or other evidentiary material that are attached to or included with a brief but not made of record during examination are untimely, and will not be considered. *See In re Fitch IBCA, Inc.*, 64 USPQ2d 1058, 1059 n.2 (TTAB 2002); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) §§ 1203.02(e) and 1207.01 (2019).[5] Accordingly, the Examining Attorney's evidentiary objection is sustained, and we give Registration Nos. 5477708 and 5481783 no further consideration in our analysis.

## II. Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973) ("*DuPont*"); *see also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We have considered each *DuPont* factor for which there is evidence and argument of record. *See In re Guild Mortg. Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019). Varying weights may be assigned

---

must determine whether such attachments are properly of record, citation to the attachment requires examination of the attachment and then an attempt to locate the same evidence in the record developed during prosecution, requiring more time and effort than would have been necessary if citations were directly to the prosecution record. *Cf. Life Zone Inc. v. Middleman Grp., Inc.,* 87 USPQ2d 1953, 1955 n.4 (TTAB 2008).

[5] To the extent Applicant wished to introduce additional evidence after its appeal had been filed, Applicant should have filed a written request with the Board to suspend the appeal and remand the application for further examination pursuant to Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d). Applicant did not do so.

to each *DuPont* factor depending on the evidence presented. *See Citigroup Inc. v. Capital City Bank Grp. Inc.,* 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1688 (Fed. Cir. 1993) ("[T]he various evidentiary factors may play more or less weighty roles in any particular determination.").

In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods or services. *See In re Chatam Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1945-46 (Fed. Cir. 2004)*; Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); *see also In re i.am.symbolic, LLC,* 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods [or services].'") (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)).

### A.  Similarity of the Goods and Services

We initially turn to the comparison of the goods and services under the second *DuPont* factor. In making our determination regarding the relatedness of the goods and services, we must look to the goods and services as identified in Applicant's application and the cited registration. *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting

*Octocom Sys., Inc. v. Hous. Computs. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods [or services] set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods [or services], the particular channels of trade or the class of purchasers to which the sales of goods [or services] are directed.")); *see also In re Giovanni Food Co.*, 97 USPQ2d 1990, 1991 (TTAB 2011). Moreover, registration must be refused in a particular class if Applicant's mark for any of its identified goods or services in that class is likely to cause confusion with the Registrant's mark for any of its identified goods or services. *See SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 938-39 (Fed. Cir. 1983) (holding that a single good from among several may sustain a finding of likelihood of confusion); *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981) (likelihood of confusion must be found if there is likely to be confusion with respect to any item that comes within the identification of goods or services in the application).

Applicant's Class 9 goods are identified as "computer software for distributing and managing information from databases, and for building decision support and business intelligence applications." Registrant's Class 9 goods are identified as "Computer software platforms and applications for using and leveraging data to better manage business and government operations; computer software that provides real-time, integrated business management intelligence by combining information

from various databases and presenting it in an easy-to-understand user interface; computer software that provides interactive real time business data mining capability in an easy to understand user interface." Although the identifications of Applicant's and Registrant's Class 9 goods are not identically worded, Applicant's more broadly defined computer software and Registrant's computer software essentially serve the same function and purpose and, therefore, are goods that are legally identical in part. For example, Applicant's "computer software for building decision support" broadly encompasses Registrant's "Computer software platforms and applications for using and leveraging data to better manage business and government operations."[6]

Applicant's Class 42 services are identified as "Computer system design services for building information systems with data access and database management, and knowledge-based systems in a wide variety of fields." Registrant's Class 42 services include "design, development and implementation of software." As such, we find that Registrant's broadly worded Class 42 computer software design services are encompassed by Applicant's "computer system design services for building information systems with data access and database management, and knowledge-

---

[6] Software for building decision support is defined as "a "[software] application that collects, organizes and analyzes business data to facilitate quality business decision-making for management, operations and planning"). *See* www.technopedia.com/definition. The Board may take judicial notice of information from dictionaries, encyclopedias and other standard reference works. *In re United Trademark Holdings, Inc.*, 122 USPQ2d 1796, 1798 n.8 (TTAB 2017) (citing *B.V.D. Licensing Corp. v. Body Action Design Inc.*, 846 F.2d 727, 6 USPQ2d 1719, 1721 (Fed. Cir. 1988) ("dictionaries and encyclopedias may be consulted")); *see also Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1934 n.61 (TTAB 2011) (encyclopedias); *In re Broyhill Furniture Indus. Inc.*, 60 USPQ2d 1511, 1514 n.4 (TTAB 2001) (dictionary entries and other standard reference works).

based systems in a wide variety of fields" because Applicant's identified services include computer software design. Thus, we find that Applicant's and Registrant's computer software design services are also legally identical in part.

The Examining Attorney submitted excerpts from both Applicant's website and Registrant's website that corroborate our finding that Applicant's and Registrant's goods and services overlap.[7] We finally note that Applicant does not contest the legal identity of the parties' respective goods and services.

Thus, the second *DuPont* factor strongly favors a finding of likelihood of confusion.

### B. Similarity of Trade Channels and Classes of Purchasers

Next we consider established, likely-to-continue channels of trade, the third *DuPont* factor. Because we have found that Applicant's and Registrant's goods and services are legally identical in part, we must presume that these goods and services travel through the same channels of trade and are offered or rendered to the same or overlapping classes of purchasers. *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (finding Board entitled to rely on this legal presumption in determining likelihood of confusion); *In re Yawata Iron & Steel Co.*, 403 F.2d 752, 159 USPQ 721, 723 (CCPA 1968) (where there are legally identical goods, the channels of trade and classes of purchasers are considered to be the same).

Thus, the third *DuPont* factor also weighs in favor of finding a likelihood of confusion.

---

[7] November 8, 2018 Final Office Action, TSDR pp. 23-30.

### C. Sophistication of Consumers

Under the fourth *DuPont* factor, we consider "[t]he conditions under which and buyers to whom sales are made, i.e., 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 177 USPQ at 567.

Applicant argues that its target consumers, namely, information technology professionals, are sophisticated consumers who can differentiate between the goods and services provided by Applicant under its involved mark as compared to those offered under the cited mark.[8]

Applicant does not elaborate on the identity of the "information technology professionals" who allegedly purchase the goods and services. Based on the lack of limitation in either identification of goods and services, there may be individuals with information technology expertise that constitute Applicant's relevant consumers, but there also may be others who are not proficient in information technology who may purchase computer-related goods and services on behalf of their businesses. *See Stone Lion Capital Partners, L.P.*, 110 USPQ2d at 1163 (where the purchaser class is mixed, the Board considers the likelihood of confusion from the perspective of "the least sophisticated potential purchasers").

However, without an explanation, supported by evidence, of how the goods and services are purchased and by whom, we cannot give much credence to Applicant's suggestion that conditions of sale mitigate any likelihood of confusion. That said, even if Applicant's unsupported argument is credited, purchaser sophistication does not

---

[8] Applicant's Appeal Brief, p. 5, 9 TTABVUE 9.

always result in a finding that confusion is unlikely, especially where legally identical in part goods and services are involved and, as explained below, the marks are similar. *Weiss Assocs. v. HRL Assocs.*, 902 F.2d 1546, 14 USPQ2d 1840, 1841-42 (Fed. Cir. 1990) (similarities of goods and marks outweighed sophisticated purchasers, careful purchasing decision, and expensive goods); *Wincharger Corp. v. Rinco, Inc.*, 297 F.2d 261, 132 USPQ 289, 292 (CCPA 1962). "That the relevant class of buyers may exercise care does not necessarily impose on that class the responsibility of distinguishing between similar trademarks for similar goods [or services]. 'Human memories even of discriminating purchasers . . . are not infallible.'" *In re Research & Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986) (quoting *Carlisle Chem. Works, Inc. v. Hardman & Holden Ltd.*, 434 F.2d 1403, 168 USPQ 110, 112 (CCPA 1970)).

Notwithstanding the foregoing, we do note that in light of the inherent nature of the goods and services involved, some degree of purchasing care may be exercised by Applicant's potential or actual consumers. On balance, we find this factor slightly favors a finding that confusion is not likely.

## D. Similarity of the Marks

We next consider the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 369 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely

to assume a connection between the parties." *In re i.am.symbolic, LLC*, 123 USPQ2d at 1748 (quoting *Coach Servs. Inc.*, 101 USPQ2d at 1721 (internal quotation marks omitted)).

For convenience, we repeat that Applicant's mark is and the cited mark is . The Examining Attorney argues that because the design of the letter "O" in Applicant's mark is highly similar to the entirety of Registrant's mark, the marks as a whole may be easily confused.[9] The Examining Attorney maintains that both designs are plain line circles broken in the upper right and lower left, with three parallel bars predominantly circumscribed therein.[10] In addition, the Examining Attorney argues that the individual terms INFORMATION and BUILDERS are highly descriptive in relation to Applicant's identified goods and services which relate to building business intelligence applications and systems.

In support of her argument, the Examining Attorney relies, in part, on evidence submitted with a Letter of Protest Memorandum associated with Applicant's involved application that identifies the cited registration as a basis for the letter of protest.[11]

---

[9] Examining Attorney's Brief, p. 6, 11 TTABVUE 7.

[10] *Id*.

[11] March 13, 2018 Letter of Protest Memorandum, TSDR pp. 1-51. Section 1715.02(b) of the TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") (Oct. 2018) provides that the "prosecution history of an application will reflect the acceptance of a letter of protest and a memorandum accepting the letter of protest and all relevant evidence will be added to the electronic file record." Accordingly, we treat the evidence submitted with the Letter of Protest Memorandum and relied upon by the Examining Attorney as automatically made of record

The evidence submitted with the Letter of Protest Memorandum includes, among other things: (1) a dictionary definition of the term "builder" which is defined as "a person or thing that creates or develops a particular thing," (2) screenshots from various third-party websites discussing "application builders," and (3) screenshots of educational course materials discussing "building information systems." In view of the foregoing, the Examining Attorney maintains that the inclusion of the descriptive terms INFORMATION and BUILDERS in Applicant's mark fails to create a sufficiently distinguishable overall commercial impression of the mark as a whole to avoid a likelihood of confusion.[12]

In challenging the refusal, Applicant argues that because the dominant portion of its mark is the wording INFORMATION BUILDERS, such wording gets greater attention than the design functioning as the first letter "O" in the term INFORMATION because the verbal portion of its applied-for mark is most likely to indicate the origin of its identified goods and services and, therefore, confusion with the cited design mark is unlikely.[13] Nonetheless, Applicant contends that the stylized letter "O" in its mark is easily distinguishable from the cited mark. Applicant argues that the differences between the respective designs of the cited mark and the "O" in

---

via the Memorandum. *See also In re Urbano*, 51 USPQ2d 1776, 1778 n.5. (TTAB 1999). To be clear, the evidence submitted with the Letter of Protest Memorandum does not carry any more weight than the other evidence submitted during prosecution. In other words, we have considered each piece of evidence, including the evidence submitted with the Letter of Protest Memorandum, for whatever probative value it merits.

[12] *Id.*

[13] Applicant's Appeal Brief, p. 6, 9 TTABVUE 10.

Applicant's composite mark are at least as significant as the similarities and make them readily distinguishable and unlikely to be confused.[14]

Specifically, Applicant maintains that, in the cited mark, the top and bottom bars extend through an opening in the circle but the center bar does not approach either arc of the circle.[15] In the stylized letter "O" in Applicant's involved mark, Applicant asserts that each of the bars extends beyond an arc of the circle and by different degrees.[16] Applicant further contends that the design element in its applied-for mark consists of two of the bars that extend through the upper opening, one more than the other, and the third bar extends through the lower opening.[17] Applicant concludes that the respective designs make very different impressions due to the vertical alignment and thickness of the identical bars in the cited design versus the thinner, unequal and misaligned bars in Applicant's stylized letter "O."[18]

Additionally, Applicant contends that even if Applicant's and Registrant's designs are similar, Applicant's mark may still be registered because marks with similar designs have been registered. *In re Guild Mortgage Co.*, 2020 USPQ2d 10279 (TTAB 2020) (appropriate to consider scope of protection of a mark or component thereof in analysis of similarity or dissimilarity of the marks). In support of its argument,

---

[14] *Id.* at p. 11, 9 TTABVUE 15.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

Applicant submitted copies of the following third-party registrations:[19]

| Reg. No. | Mark | Relevant Identification of Goods and Services |
|---|---|---|
| 2766379 | | Electronic locks, namely, computer locks, computer keys and computer hardware, in Class 9. |
| 3312576 | | Industrial grade electrical flush receptacles, in Class 9. |
| 4858062 | | Computer software for processing electronic payments and for transferring funds to and from others; Computer e-commerce software to allow users to perform electronic business transactions via a global computer |

---

[19] October 16, 2018 Response to Office Action, TSDR pp. 55-68.

Applicant also submitted a copy of Registration No. 4367092. This registration, however, has been cancelled. A cancelled registration is only evidence that the registration issued and it does not carry any of the legal presumptions under Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b). *See Bond v. Taylor*, 119 USPQ2d 1049, 1054-55 (TTAB 2016); *In re Kysela Pere et Fils Ltd.*, 98 USPQ2d 1261, 1264 (TTAB 2011) ("'dead' or cancelled registrations have no probative value at all."). As such, we have given no consideration to this particular registration.

Additionally, Applicant submitted a copy of Registration No. 5066427. However, this registration issued under Section 66(a) of the Trademark Act. As such, we have not given any consideration to this registration because it does not demonstrate exposure of the mark prior to registration through use in commerce and, therefore, has no probative value. *Calypso Tech., Inc. v. Calypso Capital Mgmt., LP*, 100 USPQ2d 1213, 1221 (TTAB 2011); *In re Princeton Tectonics, Inc.*, 95 USPQ2d 1509, 1511 (TTAB 2010).

| Reg. No. | Mark | Relevant Identification of Goods and Services |
|---|---|---|
| | | network, in Class 9; and Developing and hosting a server on a global computer network for the purpose of facilitating e-commerce via such a server; Platform as a service (PAAS) featuring computer software platforms for use in payment screen management, payment information management and payment processing management; Software as a service (SAAS) services featuring software for processing payments; Providing temporary use of on-line non-downloadable software for processing electronic payments, in Class 42. |
| 4996659 | SIGMA TECHNOLOGIES | Engineering design services, in Class 42. |

| Reg. No. | Mark | Relevant Identification of Goods and Services |
|----------|------|-----------------------------------------------|
| 5026347 | | Computer network design for others; IT consulting services; technical support, namely, monitoring technological functions of computer network systems; computer network support consulting; design of multiline telecommunications systems, namely, VOIP systems, Class 42. |
| 5047788 | | Computer software for use in processing semiconductor wafers, in Class 9; and <br><br> custom design and development of testing equipment for processing semiconductor wafers and integrated circuits; design and development of automated controller systems, namely, temperature, humidity and electrical controllers; design and development of internal cooling apparatus for electronic parts; developing quality control standards for integrated circuits and semiconductor wafers; design of integrated circuit sockets; research and |

| Reg. No. | Mark | Relevant Identification of Goods and Services |
|---|---|---|
| | | development of new products for others, in Class 42. |
| 5101445 | | Computer game software; Computer programs for video and computer games; Video game software; Downloadable video game software and downloadable computer game software; Computer game software for use on mobile and cellular phones, in Class 9. |

We find Applicant's arguments unpersuasive. As previously noted, we must base our determination regarding the similarity of the marks on a consideration of the marks in their entireties. *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); *see also Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 23, 234 (CCPA 1981). However, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks as a whole. *In re Nat'l Data Corp.*, 224 USPQ at 751; *see also Price Candy Co. v. Gold Medal Candy Corp.*, 220 F.2d 759, 105 USPQ 266, 268 (CCPA 1955).

It is clear Applicant's mark and the cited design mark are not identical because the literal portion of Applicant's mark, i.e., the wording INFORMATION BUILDERS, is absent from the cited mark. However, even if we were to assume the wording INFORMATION BUILDERS constitutes the dominant portion of Applicant's mark,

the design functioning as the letter "O" is nonetheless a salient, distinctive feature of Applicant's mark which must be given due consideration. The design in Applicant's mark forms an integral part of the mark. It functions as the letter "O" but in a way that would be viewed by consumers as a distinct design and not simply as a stylized letter "O". When comparing the design which functions as the letter "O" in Applicant's mark with the cited mark, we are of the opinion that the two designs have substantial visual similarities. We note particularly that both designs consist of a broken circle with three parallel lines or bars emanating from the top right of the circle to the bottom left of the circle. Accordingly, when encountering Applicant's mark, consumers, given their general rather than specific impressions of marks, may mistakenly believe Registrant's design mark is being used in Applicant's mark.

While we recognize that a side-by-side comparison is not the proper manner in which to evaluate the similarities of the marks at issue, there is no doubt that if the two designs were to be placed side-by-side, certain differences between them including those specifically enumerated by Applicant would be discernible. However, in the normal environment of the marketplace where purchases are actually made, purchasers and prospective purchasers would not usually have the opportunity for a careful examination of these marks in minute detail, even if such consumers are sophisticated as suggested by Applicant. *See Grandpa Pidgeon's of Mo., Inc. v. Borgsmiller*, 477 F.2d 586, 177 USPQ 573, 574 (CCPA 1973) (differences in marks not likely to be recalled by consumers at spaced intervals; purchasers do not engage in trademark dissection).

An individual relies on the recollection of the various marks that he or she has previously seen in the marketplace, *see, e.g.*, *Franklin Mint Corp.*, 212 USPQ at 234 ("Those who comprise the purchasing public for these goods ordinarily must depend upon their past recollection of marks to which they were previously exposed.") (citation omitted), and, more frequently than not, such recollection is not enhanced with minute details or specific characteristics of the marks, but is determined by an overall or general impression of the many and various marks that exist in the marketplace. Viewing the respective marks of Applicant and Registrant from this standpoint, it is apparent, as discussed above, that there are important resemblances in the overall design format and especially in the commercial impression which they convey to customers.

In addition, the record demonstrates that the terms "INFORMATION" and "BUILDERS" individually are descriptive in relation to Applicant's goods and services, which relate to building information systems, and fail to create a meaningful, distinguishable overall commercial impression to avoid a finding of likelihood of confusion. We further note that after the Examining Attorney imposed a disclaimer requirement for the phrase "INFORMATION BUILDERS," Applicant responded with a disclaimer of the terms "INFORMATION or BUILDERS" apart from the mark as shown. By doing so, Applicant concedes that the terms INFORMATION and BUILDERS, when considered individually, are merely descriptive of Applicant's identified goods and services. Disclaimed, generic or descriptive matter generally has less significance in likelihood of confusion

determinations. *See In re Nat'l Data Corp.*, 224 USPQ at 752; *see also Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1846 (Fed. Cir. 2000) (quoting *In re Nat'l Data Corp.,* 224 USPQ at 752 ("Regarding descriptive terms, this court has noted that the descriptive component of a mark may be given little weight in reaching a conclusion on the likelihood of confusion")); *In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997); *In re Code Consultants, Inc.*, 60 USPQ2d 1699, 1702 (TTAB 2001) (disclaimed matter is often "less significant in creating the mark's commercial impression"). Accordingly, the inclusion of the descriptive terms INFORMATION and BUILDERS in Applicant's involved mark is insufficient to distinguish Applicant's mark from the cited mark.

We recognize that greater weight is often given to the wording in a mark because it is the wording that purchasers often use to refer to or request the goods or services. *See In re Viterra, Inc.*, 101 USPQ2d at 1911. Here, as noted above, the design in Applicant's mark is not separate and apart from the literal wording. Instead, it is centrally placed and forms an integral part of the term INFORMATION. As such, when a consumer reads the literal portion of Applicant's mark, and encounters the distinct design in the term, they will have to realize that the design functions as the letter "O." For that reason, we find the general tendency of the literal portion of a mark to weigh more heavily in a likelihood of confusion analysis inapplicable under these circumstances. *Cf. Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 U.S.P.Q.2d 1129, 1135 (Fed. Cir. 2015) (in appropriate circumstances, the Board can give greater weight to a

design component of a composite mark); *see also In re Electrolyte Labs. Inc.*, 913 F.2d 930, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990) ("There is no general rule as to whether letters or design will dominate in composite marks."). Further, although there is no explicit rule that marks are automatically similar where the junior mark contains a highly similar version of the entirety of the cited mark, here, the cited mark is inherently distinctive and Applicant has not submitted any evidence of third-party use of similar marks for similar goods and services to demonstrate that it is commercially weak.

With regard to the seven third-party registrations submitted by Applicant that we may consider, five of them, i.e., Registration Nos. 2766379, 3312576, 4996659, 5047788, and 5101445, do not identify goods and services related to the goods and services at issue here and, therefore, have no bearing on the scope of protection to be accorded to Registrant's design mark. *See In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1639 (TTAB 2009) (third-party registrations found to be of limited value because goods identified in the registrations appeared to be in fields which were far removed from the involved products).

The remaining two registrations, i.e., Registration Nos. 4858062 and 5026347, for the design marks and , respectively, do involve computer goods and services arguably related to those identified in the cited registration. However, neither of these marks is as close to the cited mark as the design in Applicant's mark, and therefore we find these two registrations do not diminish the

distinctiveness of the cited mark or its entitlement to protection against Applicant's mark. *See, e.g.*, *Palisades Pageants, Inc. v. Miss Am. Pageant*, 442 F.2d 1385, 169 USPQ 790, 793 (CCPA 1971) (discounting the probative value of third-party registrations where "appellant's mark is closer to appellee's than even the closest of the third-party registrations"). In fact, there is no evidence of record that the cited mark has any non-source identifying meaning with respect to Registrant's identified goods and services. [20]

In sum, we find that the record does not demonstrate that the cited mark has been diluted by third-party registrations. Rather, we find that, based on the record, the Registrant's mark is inherently distinctive for the goods and services identified in the cited registration and accord it the normal scope of protection to which inherently distinctive marks are entitled. Moreover, the fact that a highly similar version of Registrant's mark is subsumed by Applicant's mark only increases the similarity between them, especially where, as here, the marks are used on goods and services that are legally identical in part.

Viewing the marks in their entireties and given that the individual words in Applicant's mark are merely descriptive of Applicant's identified goods and services, we find the visual resemblances and highly similar commercial impressions between Applicant's mark and the cited mark to cause purchasers and prospective purchasers, including those described by Applicant as sophisticated, who have become familiar

---

[20] As noted, Applicant did not submit any evidence demonstrating third-party use of marks identical or similar to the cited mark for identical or similar goods or services to those recited in the cited registration.

with either Applicant's or Registrant's goods and services, and who then encounter the other's mark on the other's goods and services, to mistakenly believe that these products and services originate from or are sponsored by the same entity. *Cf. Phillip Morris Inc. v. Rothmans of Pall Mall Ltd.*, 180 USPQ 592 (TTAB, 1973) and cases cited therein.

Accordingly, we find that the marks are sufficiently similar that the first *DuPont* factor favors a finding of likelihood of confusion.

### E.  Thirteenth *DuPont* Factor - Applicant's Claim of Prior Registrations

The thirteenth *DuPont* factor is "any other established fact probative of the effect of use." *DuPont*, 177 USPQ at 567. Presumably under this factor, Applicant claimed ownership of four registrations, copies of which were submitted by Applicant.[21] The registrations are identified below.

- Registration No. 1881342 for the standard character mark INFORMATION BUILDERS (INFORMATION disclaimed) for "computer programs for building and operating information systems, data access, data base management, and knowledge-based systems in a wide variety of fields" in Class 9;

- Registration No. 1884268 for the composite mark **Information Builders** (INFORMATION disclaimed) for "computer programs for building and operating information systems, data access, data base management, and knowledge-based systems in a wide variety of fields" in Class 9;

- Registration No. 2475662 for the standard character mark INFORMATION BUILDERS (INFORMATION disclaimed) for "computer software for database management; computer software for use in decision support systems; computer software for use in

---

[21] October 16, 2018 Response to Office Action, TSDR pp. 17-21.

enterprise reporting and analysis systems and for building applications for the management and tracking of data for enterprise reporting systems; computer database programs and data access systems for use in connection with decision support, analysis, and reporting programs; computer software development tools for use in developing decision support, analysis, and reporting systems and applications; computer software, namely, client/server reporting, analysis and decision support tools; computerized database, reporting, and analysis systems for use on corporate intranet web sites; enterprise server software for use in web based data publishing, reporting, and analysis solutions; computer software for accessing databases by means of global computer networks to generate reports; software development tools for making reporting and analysis available through global computer network worldwide websites and for extending the functionality of enterprise reporting and analysis systems on to global computer networks; and computer software for accessing and updating databases through global computer networks" in Class 9; and

- Registration No. 2552546 for the standard character mark INFORMATION BUILDERS (INFORMATION disclaimed) for "training in the use and operation of computer software, and education services in the nature of computer training" in Class 41.

Applicant argues that these four registrations demonstrate that its applied-for mark is unitary.[22] The alleged unitary nature of Applicant's involved mark, however, does not call into question the Section 2(d) refusal. Three of the four prior registrations do not include a design element and, therefore, are not relevant to our Section 2(d) analysis. The only prior registration which includes a design element is

---

[22] With regard to the disclaimer refusal, Applicant makes the similar argument that the wording INFORMATION BUILDERS, as a whole, is allegedly unitary. *See* Applicant's Brief, pp. 7-9, 9 TTABVUE 11-13. As discussed below, however, the Examining Attorney altered the disclaimer refusal in her denial of Applicant's request for reconsideration to only require a disclaimer of "INFORMATION or BUILDERS;" that is, of the words individually. Thus, Applicant's unitary argument vis-à-vis the disclaimer refusal is moot.

the registration for the composite mark **Information Builders** for goods that are

identical to the Class 9 goods identified in Applicant's involved application.

Even assuming the imperfect recollection of relevant consumers, we find that the

design which functions as the letter "O" in this particular prior registration is

sufficiently dissimilar from that of the cited mark in this case to allow both

registrations to co-exist on the Principal Register. Specifically, the design comprising

the letter "O" in Applicant's prior registration features a solid circle with five parallel

lines or bars of varying length featured in negative space emanating from the circle's

lower left side for the first "O" in "INFORMATION," whereas Registrant's mark is a

plain line circle, broken in the upper right and lower left, with three stacked parallel

lines or bars predominantly circumscribed therein, nearly identical to the design

functioning as the letter "O" featured in Applicant's applied-for involved mark.

For these reasons, Applicant's prior registrations are not probative on the issue of

likelihood of confusion in this appeal under the thirteenth *DuPont* factor.[23]

## F. Conclusion

We have considered all of the arguments and evidence of record, including those

not specifically discussed herein. We have found that: (1) the marks are similar in

---

[23] The circumstances here differ from those addressed in our decision in *In re Strategic Partners, Inc.*, 102 USPQ2d 1397 (TTAB 2012). In *Strategic Partners*, we reversed a Section 2(d) refusal based, in part, upon our finding that the applicant owned a registration for a substantially similar mark that had co-existed with the cited registration for over five years. As noted, Applicant's prior registration with a design element is not sufficiently similar to the cited registration nor is it sufficiently similar to its involved applied-for mark.

appearance and overall commercial impression; (2) Applicant's and Registrant's identified goods and services are legally identical in part; (3) the parties' respective goods and services are presumed to move in identical or overlapping trade channels and would be offered to the same or overlapping classes of purchasers; (4) Applicant has not demonstrated that the scope of protection of the cited mark has been lessened by the existence of prior third-party registrations; and (5) while the goods and services at issue may be purchased by information technology professionals, any weight this adds to a finding of no confusion is outweighed by the similarity of the marks, the legally identical in part goods and services, and the other factors discussed. In view thereof, we conclude that Applicant's mark, as used in connection with the goods and services identified in its involved application, so resembles the cited mark for Registrant's identified Class 9 goods and Class 42 services as to be likely to cause confusion or mistake, or to deceive under Section 2(d) of the Trademark Act.

## III. Disclaimer Requirement

In the initial and final office actions, the Examining Attorney required Applicant to disclaim the wording INFORMATION BUILDERS apart from the mark as shown on the ground that the wording, in its entirety, is merely descriptive of Applicant's identified goods and services. Applicant did not provide the disclaimer as required. Instead, Applicant provided the following disclaimer:

No claim is made to the exclusive right to use "INFORMATION" or "BUILDERS" apart from INFORMATON [sic] BUILDERS or apart from the mark as shown."

In doing so, Applicant argues that the wording INFORMATION BUILDERS is unitary in nature and, therefore, a disclaimer of INFORMATION BUILDERS is inappropriate.[24] However, in the denial of Applicant's request for reconsideration, the Examining Attorney altered the requirement so that Applicant need only disclaim INFORMATION **or** BUILDERS apart from the mark as shown, instead of the wording in its entirety.[25] (emphasis added).

Further, the Examining Attorney maintained that Applicant's submitted disclaimer would be acceptable but for the addition of "apart from INFORMATON [sic] BUILDERS" which the Examining Attorney contends is extraneous matter and nevertheless misspells the word INFORMATION.[26] In view of the foregoing, the Examining Attorney made final the requirement to provide a disclaimer that comports with the standardized disclaimer format which should read as follows: "No claim is made to the exclusive right to use INFORMATION or BUILDERS apart from the mark as shown."[27]

TMEP Section 1213.08(a)(i) provides, in relevant part, as follows:

Where … adjacent components that do not form a grammatically or otherwise unitary expression must be disclaimed, the following format is suggested:

---

[24] Applicant's Appeal Brief, pp. 7-9, 9 TTABVUE 11-13.

[25] June 10, 2019 Denial of Request for Reconsideration, 5 TTABVUE 3.

[26] *Id.*

[27] *Id.*

No claim is made to the exclusive right to use "_____" and "_____" apart from the mark as shown.

While the "and" connector is preferred, the USPTO will also accept a statement that "no claim is made to the exclusive right to use "_____" or "_____" apart from the mark as shown."

By allowing Applicant to disclaim the terms INFORMATION and BUILDERS individually, it appears that the Examining Attorney is no longer taking the position that the literal phrase INFORMATION BUILDERS is a unitary expression that is merely descriptive of Applicant's identified goods and services. That being said, we agree with the Examining Attorney that the disclaimer provided by Applicant is inappropriate. First, as noted by the Examining Attorney, Applicant has misspelled the term INFORMATION. Second, and more importantly, Applicant seeks to add extraneous matter to the disclaimer, namely, that it is not disclaiming rights to INFORMATION BUILDERS.

Under Section 6 of the Trademark Act, "[t]he Director may require the applicant to **disclaim** an unregistrable component of a mark." 15 U.S.C. § 1056 (emphasis added). Therefore, "[w]ording that claims matter, rather than disclaims it, is not acceptable. A disclaimer should be no more than a statement that identifies matter to which the applicant may not have exclusive rights apart from what is shown on the drawing." TMEP § 1213.08(a)(ii); *see also Textron Inc. v. Pilling Chain Co.*, 175 USPQ 621, 621-22 (TTAB 1972). As that section makes clear, "statements that the applicant 'claims' certain matter [shown in the mark] are not acceptable. The examining attorney must require correction of this wording **and of variations that amount to the same thing**." (emphasis added).

Here, Applicant's proposed disclaimer essentially seeks to claim rights to the literal wording INFORMATION BUILDERS standing alone, i.e., without the stylized letter "O" in the term INFORMATION. This is tantamount to claiming matter shown in the mark, although the wording "INFORMATION BUILDERS" itself, without the design, is not Applicant's applied-for mark. Accordingly, the requirement to disclaim the terms INFORMATION or BUILDERS disjunctively apart from the mark as shown and without referring to the disclaimer as not including a term that is not at issue is affirmed.

**Decision**: The refusals to register Applicant's mark under Section 2(d) of the Trademark Act and on the ground that Applicant failed to comply with the Examining Attorney's requirement to provide a proper disclaimer are affirmed.

However, if Applicant submits the required, properly worded disclaimer to the Board within 30 days from the date of this decision and prior to filing any appeal of this decision, the requirement for the disclaimer will have been met. Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g); TBMP § 1218. The disclaimer should read as follows: "No claim is made to the exclusive right to use INFORMATION or BUILDERS apart from the mark as shown." TMEP § 1213.08(a)(i). The submission of the required disclaimer, however, will not overcome the refusal to register under Section 2(d) of the Trademark Act and does not serve to toll the time to appeal the Board's decision.